# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EARL J. MARKEY III,** ) | Case No. 22-4307-RBS |
| ) | |
| **Plaintiff,** ) | **AMENDED COMPLAINT FOR** |
| ) | **DECLARATORY, INJUNCTIVE,** |
| -against- ) | **AND OTHER RELIEF** |
| ) | |
| **CAROLINE THOMPSON,** ) | 42 U.S.C. §§ 1983, 1988 |
| **Council President,** ) | 17 U.S.C. §§ 107, 502, 511 |
| **Borough of Yardley,** ) | |
| **in her individual and** ) | |
| **official capacities;** ) | **JURY TRIAL** |
| ) | **DEMANDED** |
| **PAULA JOHNSON,** ) | |
| **Manager and Agency Open** ) | |
| **Records Officer,** ) | |
| **Borough of Yardley,** ) | |
| **in her individual and** ) | |
| **official capacities;** ) | |
| ) | |
| -and- ) | |
| ) | |
| **BOROUGH OF YARDLEY,** ) | |
| ) | |
| **Defendants.** ) | |

## INTRODUCTION

Many people take the idiom you cannot fight city hall—or in this case borough hall—to heart. The Plaintiff rejects this sentiment outright. The Plaintiff joins various federal claims under the Civil Rights Act and Copyright Act against Yardley Borough and its officials in this action.

After a string of resignations from Borough Council, the Plaintiff decided to act and put a question on the ballot to reduce the number of borough council members. See WHYY-News, *Yardley voters reject ballot question about reducing the size of borough council*, https://whyy.org/articles/pa-election-2022-yardley-borough-ballot-question/. Those entrenched in Yardley Borough Hall and their supporters are perhaps quite displeased with the Plaintiff's activism.

## Civil Rights Violations

Nevertheless, those entrenched in Yardley Borough Hall cannot trample upon Plaintiff's fundamental civil liberties. Despite the Plaintiff's pro se litigation to put the question on ballot and his astuteness with "constitutional questions" and "claims of selective enforcement based on viewpoint"[1], two Yardley Borough officials had the gall to censor the Plaintiff's written speech on the Yardley Borough Facebook page. Plaintiff now seeks through this lawsuit to vindicate his free speech rights.

## Copyright Fair Use – Photographing / Duplicating Public Records

Yardley Borough is also using the Copyright Act to frustrate efforts by the Plaintiff to obtain copies of public records for fair use purposes including government transparency and accountability.

---

[1] *Markey v. Wolf*, No. 19A1042 (U.S. 2020) (Alito, J., denying) (Available at https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/19a1042.html).

Therefore, the Plaintiff seeks declaratory relief to resolve a conflict of law between the Copyright Act and RTKL.[2]

Ergo, Plaintiff, in pro se, avers the following:

## PARTIES

1.    Plaintiff Earl J. Markey III, an adult individual who resides at 26 West College Avenue, Yardley, Pennsylvania 19067.

2.    Defendant Caroline Thompson is President of Council and an elected councilwoman of the Borough of Yardley. She is sued in her individual and official capacities.

3.    Defendant Paula Johnson is employed as the Manager and Agency Open Records Officer of the Borough of Yardley. She is sued in her individual and official capacities.

4.    Defendant Borough of Yardley ("Yardley Borough") is a political subdivision of the Commonwealth of Pennsylvania situated in the County of Bucks, incorporated as a municipal corporation in conference with the Pennsylvania Borough Code. Yardley Borough is governed by a mayor and borough council currently consisting of seven members. The day-to-day operations of Yardley Borough are performed by employees under the supervision of Defendant Johnson.

5.    The Defendants' principal address is Yardley Borough Hall 56 South Main Street, Yardley, Pennsylvania 19067.

---

[2] Declaratory relief would address similar conflicts of law between the Copyright Act and FOIA.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, as this action challenges Defendants' violation of Plaintiffs' civil rights pursuant to 42 U.S.C. § 1983.

7.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, as to Plaintiff's fair use and Defendants' potential liabilities arising under the Copyright Act pursuant to 17 U.S.C. § 107 and 17 U.S.C. §§ 502, 511, respectively.

8.    Venue lies in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the event giving rise to the claims occurred in this judicial district.

## STATEMENT OF FACTS

### *Civil Rights Violation*

9.    Among Defendant Johnson's stated job duties is that she "communicates with residents via social media." https://www.yardleyboro.org/borough-staff-1

10.    That Defendant Johnson consults with Defendant Thompson in the performance of her duties.

11.    That at all relevant times at issue, Yardley Borough maintains a Facebook page for " Official News and notes on everything Yardley Boro! Also on twitter @YardleyBoro" https://www.facebook.com/YardleyBoro.

12.    Defendant Yardley Borough has not adopted a social media policy to govern its official Facebook page.

13.    Comments presenting a viewpoint critical of Yardley Borough officials have been removed or deleted from the official Facebook page.

14.    There are instances where posts containing entire threads of critical comments were removed or deleted.

15.    In addition to "Official News", Defendant Yardley Borough uses the Facebook page to advocate for causes and viewpoints favored by Yardley Borough Council or staff. For example, on October 12 at 10:35 AM the following post appeared on the Facebook page.

> As you drive down South Main Street this week, you may notice a few picture boards on the lamp posts. Yardley Borough remembers Kayden.
> Kayden's Korner is dedicated to the protection of children innocently involved in domestic custody challenges.
> It is the mission of Kayden's Korner to affect judicial reform of the family court system through the education of government to the signs of domestic abuse and shine a light on the impact of mental illness to make the health and safety of children the singular concern of the court system.

16.    What is more, Defendants allowed comments to such posts. For example, on October 16, 2022 at 4:40 AM, Kaydens Korner[3] commented "Krit Danysh-Ford get the house to pass it through committee get it to the floor for Vote then get it to our governors desk to sign. Pa would get millions to adopt the law.. Kauffman the Republican judicial committee chair is the hold up. This is common sense. Nothing more."

---

[3] https://www.facebook.com/KaydensKornerFoundation

17.    At the October 4, 2022 Yardley Borough Council Meeting Plaintiff stated, "[w]e need to tread carefully with […] the regulation of political speech" https://patch.com/pennsylvania/yardley/election-signs-violate-zoning-ordinance-yardley-resident-protests.

18.    On October 13, 2022, Plaintiff received an email from Yardley Borough Code Enforcement Officer Wesley Foraker stating:

> Gentlemen, I am writing to you as you are your local party chairs. This morning I removed political signs from both parties from The Annex Building and FitzGeralds Field, Yardley Borough properties. The signs are on the loading dock behind Borough Hall. If not picked up by Wednesday morning I will dispose of them.

19.    That said same day, Plaintiff responded by email stating:

> Thank you kindly for your email. Members of the Yardley Borough Republican Committee have not placed nor directed anyone else to place signs on public property within Yardley Borough in this election cycle. Unfortunately, people obtain signs and go about indiscriminately placing them everywhere. Each sign should contain a disclosure indicating the person or political action committee who paid for the sign. This is the responsible entity for each sign. Having said that, I would note that signs of similar size and construction are apparently permitted on Yardley Borough property (Borough Hall and Buttonwood Park) advertising the Farmer's Market. As I remarked at the last council meeting, the Borough should "thread [sic] carefully"; availing public property for one viewpoint may create a public forum for other viewpoints. See *Center For Investigative Reporting v. SEPTA*, 975 F.3d 300 (3d Cir. 2020). Thank you again for your email.

20.    Defendants Caroline Thompson and Paula Johnson were copied on the email thread between the Plaintiff and Foraker.

21.    On October 24, 2022 at 12:47 PM, Caroline Thompson published a "brief informational piece about [her] take on the ballot referendum" on her Yardley Borough Councilwomen Caroline Thompson official Facebook page.

22.    Plaintiff commented on this information piece post, his comments were not removed or deleted, and  robust debate ensued among the commenters.

23.    Thompson then commented on Plaintiff's "Official page of Yardley Borough Republican Committeeman Earl Markey" using her official Councilwomen Caroline Thompson Facebook account and the following exchange ensued.

> Councilwomen Caroline Thompson: "Where are the records that Dawn Perlmutter[4] claimed were shipped to Paula Johnson's home at the October 18 council meeting? These records prove that that statement was false."

> Committeeman Earl Markey: "Councilwoman Caroline Thompson It was posted. Here, I highlighted where the house number was redacted. Apparently, she bought aquarium supplies with the borough's credit card."

> Councilwomen Caroline Thompson: "Committeeman Earl Markey the borough office has an aquarium. It's been there since before Manager Johnson was manager. They will let you feed the fish when you visit if you want."

---

[4] Plaintiff is aware of this Court's recent Memorandum Opinion in *Perlmutter v. Varone*, Civil Action 21-5018 (E.D. Pa. Dec. 29, 2021).

Committeeman Earl Markey: "Councilwoman Caroline Thompson do the taxpayers also pay for dog and cat food when employees bring pets into the office?"

24.    At approximately 5:08 AM on October 26, 2022, Plaintiff commented "Appointed Councilman Matt Curtin wants to raise your property taxes by two mills. Stop unelected, out of touch investment bankers, like Matt Curtin, from volunteering your hard-earned money for higher taxes. Vote YES on the referendum to reduce the size of Yardley Borough Council. https://patch.com/pennsylvania/yardley/tax-hike-looming-yardley-borough-residents" to the 10-18-2022 recording of the Yardley Borough Council meeting on the Yardley Borough Official Facebook Page (https://www.facebook.com/YardleyBoro).



25.    When Plaintiff visited Yardley Borough's Facebook page at approximately 3:30 PM, he discovered his comment had been removed.



26.    Upon noticing the comment, Defendant Johnson, flagged the comment as a personal attack.

27.    Defendant Johnson then contacted Defendant Thompson to request permission to remove the comment.

28.    Defendant Thompson gave Defendant Johnson permission to remove the comment without consulting the six other members of Borough Council.

29.    Defendant Johnson removed the comment as an administrator of the page.

30.    Defendants only allowed the Plaintiff to repost his comment after commencement of this action and at the risk of imminent injunctive relief.

31.    What is more, the Defendants did not contact the Plaintiff regarding the post until after this Court entered its Order Scheduling Hearing on Emergency Motion.

32.    At the November 1, 2022 Yardley Borough Council meeting, Defendant Caroline Thompson made the following statement publicly[5]:

> Moving on to my report. This is a statement that I have prepared. Typically, we would keep pending litigation off of the public meeting. However, I believe we need to provide context for our next agenda item and why I feel we need to move swiftly to adopt it.
>
> Late Thursday, we were informed by Curtin and Heefner that Earl J Markey III filed a federal lawsuit against the Borough. The complaint alleges that Mr. Markey's First Amendment rights were infringed when the Borough allegedly deleted his comment from the Yardley Borough Facebook page. Mr. Markey also filed a temporary restraining order in the US District Court against the Borough. Both documents are publicly available through the US District Court's docketing system. The hearing for the TRO was set for yesterday at 1 PM in Philadelphia. Preparing for such a hearing in only one business day would have been a financial burden to the Borough. Therefore, the TRO hearing was canceled after the Borough met three demands that Earl Markey made. First demand: we allowed Mr. Markey to repost his comment; second demand: we reimbursed the $300 filing fee[6] paid by Mr. Markey; and

---

[5] Available on the Yardley Borough Facebook page (https://fb.watch/gLFyKlbfZN/ at 1:01:25). The filler word "umm" has been omitted from transcription.
[6] The Defendants have yet not reimbursed the Plaintiff as agreed. It also appears Defendant Thompson was mistaken regarding the filling fee in this Court.

third demand: we provided Mr. Markey with names of Borough officials who admin our Facebook page and make decisions for that page. While the TRO has been canceled, the federal lawsuit remains pending. I added this item to the agenda for transparency. Mr. Markey has again approached the Borough to settle the lawsuit and has made four demands of the Borough. These will be discussed during executive session this evening. If there are any questions or comments on the matter, I will receive them now, however, I will make no further comment on this matter.

Questions from council….from the public….hearing none, we will now move along to the Yardley Borough Social Media Policy Draft.

This document includes three parts, a social media policy for Yardley Borough for our own social media accounts, a social media policy for Borough staff, in terms of what is appropriate to do with their personal accounts as well as a social media policy for elected officials  on what is appropriate for them to do on their elected official pages as well as their personal pages. I am providing copies for the public. Let the record reflect, Mary Anne, that I am providing a copy with Mr. Markey and anyone else from the public who would like a copy. I am not looking for action on this this evening. We will hopefully vote on a final copy at our next meeting. I painted with broad strokes in this document. I expect that it will be edited down, and includes portions of policies from neighboring municipalities, including Newtown and Lower Makefield Township.

Are there any questions from anyone from Council, on this document, at this juncture….. Questions or comments from the public. Alright, please feel free to send any edits that you have to myself directly or to Manager Johnson. I would be happy to receive them to apply to the draft that we discuss and hopefully vote on at our next meeting. Please be advised that the police department social media policy which has been in effect since 2014. [Police Chief: "Spring of 2015"]. 2015, thank you sir. Has also been updated to align with the changes we are making for the Borough.

Alright we will move along to discussion items.

33. Yardley Borough Social Media Policy Draft proposed by Defendant Thompson—in response to this action—includes a "Posted Comments Policy" with a policy edict that proclaims, "the Borough social media is for moderated online discussions only and is not a public forum." Exhibit A.

34. Defendant Thompson's propounded "Posted Comments Policy" further decrees the Borough may "remove comments that contain […] false, misleading or deceptive information or media […] personal attacks or threatening or harassing activity of any kind […] links to other sites."

35. Defendant Thompson's proffered diktat then lauds, "[t]he Borough will delete any comment that violates this Policy. Users will be blocked and/or reported to the social media site's representative."

36. The First Amendment embodies "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). The government may not silence speech because it criticizes government officials or employees, or their favorite ideas or initiatives, even if that speech does so in ways that many people may find unpleasant.

37.    The First Amendment's protections extend to public speech on Yardley Borough's official Facebook page, by operation of the Fourteenth Amendment.

38.    "[A] public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 802 (1985) (citation omitted). A limited public forum is "a subcategory of the designated public forum." *Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist.*, 877 F.3d 136, 142 n.2 (3d Cir. 2017) (internal quotation marks omitted).

39.    Yardley Borough's Facebook page a limited public forum for "Official News and notes on everything Yardley Boro."

https://www.facebook.com/YardleyBoro

40.    It is incontrovertible that a proposed tax increase, referendum to reduce the size of council, and criticism of an appointed council member falls squarely within the scope of "everything Yardley Boro."

41.    "It is cyberspace—the 'vast democratic forums of the Internet' in general, and social media in particular," that is "the most important place[] . . . for the exchange of views" in the modern era. *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735, 1743 (2017). Indeed, social media platforms like Facebook provide "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard." *Id.* at 1737. The governed can "petition their elected

representatives and otherwise engage with them in a direct manner." *Id.* at 1735.

42.   "Viewpoint discrimination is impermissible in any forum." *Center For Investigative Reporting v. SEPTA*, 975 F.3d 300, 313 (3d Cir. 2020), *cert. denied.* "When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant. Viewpoint discrimination is thus an egregious form of content discrimination." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995).

43.   Plaintiff believes and therefore avers that Defendants Caroline Thompson and Paula Johnson actions were each, individually prompted by ill will or spite as well as a desire to chill the Plaintiff's speech that was critical of them or other Yardley Borough officials.

44.   Plaintiff believes and therefore avers Defendants Caroline Thompson and Paula Johnson each, individually censored Plaintiff's protected speech with reckless or callous disregard to the Plaintiff's First Amendment rights.

45.   Plaintiff believes and therefore avers the decision to violate his Plaintiff's First Amendment rights was made by a policymaking official of Defendant Borough of Yardley.

46.   Plaintiff believes and therefore avers Defendant Borough of Yardley's decision to violate his Plaintiff's First Amendment rights was also caused by a failure of its policymakers to adopt a social media

policy (that conforms with the First Amendment) because such a violation is a highly predictable consequence without such as policy.

47.    Plaintiff believes and therefore avers the Yardley Borough Social Media Policy Draft proposed by Defendant Thompson does not conform with the First Amendment and that further violations of Plaintiff's Free Speech rights, to include being blocked completely from official Yardley Borough social media, would be a highly predictable consequence of the application of this policy.

48.    Plaintiff believes and therefore avers that, even with commencement of this action and risk of imminent injunctive relief, the Defendants—and Defendant Thompson in particular—have not been adequately deterred from committing further violations of the Plaintiff's Free Speech rights.

*Copyright Fair Use – Photographing/Duplicating Public Records*

49.    The Plaintiff frequently uses the Pennsylvania Right-to-Know Law ("RTKL"), 65 P.S. §§ 67.101 *et seq.* to gain access to public records of Yardley Borough.

50.    The RTKL is a state statute analogous with and having the same basis purpose of the federal Freedom of Information Act "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

51.    At the September 6, 2022 and September 20, 2022, Council meetings Dawn Perlmutter alleged Yardley Mayor Chris Harding  made

significant changes to the facade of his home in the Yardley Borough Historic District without being required to first obtain approval from the Historical Architecture Review Board as well as zoning and building permits.[7]

52.    On September 29, 2022, Dawn Perlmutter requested to inspect files for various properties including the Mayor Harding's home pursuant to the RTKL.

53.    On October 4, 2022, the Borough issued a response indicating in relevant part that engineering and architectural drawings contained in the file are protected by the Federal Copyright Act, original author is deceased, and the Borough was unable to obtain permission from the current copywrite holder(s). Two days later, Perlmutter was allowed to inspect but not photograph the records.

54.    On October 7, 2022, the Plaintiff requested access to inspect and photograph the copyrighted engineering and architectural drawings in the Defendant Yardley Borough's procession pursuant to the RTKL by written request to the Agency Open Records Officer (AORO) Paula Johnson.

55.    On October 18, 2022, Plaintiff filed a motion to participate in *Perlmutter v. Yardley Borough*[8] before the Pennsylvania Office of Open Records (OOR). The OOR denied the motion immediately, noting that there is an adequate remedy at law.

---

[7] Following the September 6, 2022 Council meeting, Mayor Harding made application for a Certificate of Appropriateness to the Yardley Borough Historical Architecture Review Board (HARB). The application was approved HARB on October 6, 2022 and adopted by Yardley Borough Council on October 18, 2022.
[8] Perlmutter made timely appeal to the OOR on October 7, 2022.

56.   Pennsylvania Courts have concluded that "duplication of copyrighted material under the RTKL implicates rights and potential liabilities arising under the Copyright Act that can only be resolved by the federal courts." *Ali v. Philadelphia City Planning Commission*, 125 A.3d 92, 105 (Pa. Commw. Ct. 2015).

57.   On November 4, 2022, the OOR, relying upon *Ali*, held that "to take a photograph of the record which is a permissible form of duplication. However, as discussed below, the OOR cannot order the Borough to duplicate copyrighted material." *Perlmutter v. Yardley Borough*, Pa. OOR Dkt. AP 2022-2347 at 6. The OOR concluded that it "cannot order the Borough to allow the photographing of copyrighted material." *Id.* at 8.

58.   On November 5, 2022, Defendant Johnson, in her official capacity as AORO, via email from the Borough's solicitor, confirmed Plaintiff's appointment to inspect the records but indicated Plaintiff would not be allowed to photograph "the architectural drawings protected by copyright statute."

59.   On November 7, 2022, Plaintiff attended the inspection appointment and was not allowed to photograph copyrighted public records. Plaintiff requested that the Defendant provide electronic copies of Application to HARB submitted by then Borough Council President Harding dated December 8, 2004 (hereafter 2004 Application).

60.   The 2004 Application includes three copyrighted drawings titled "Building Information" and numbered A1, A2, and A3.

61.   Each drawing contains the following:

Design Copyright 2004
All Rights Reserved
Brooks D. Kaufman & James W. Gray
New Hope, PA

62.    On November 7, 2022, Plaintiff took an appeal to the OOR challenging AORO Johnson's determination as to the copyrighted public records. At the same time, Plaintiff filed a motion to stay the OOR appeal pending the disposition of the federal copyright questions in this action. The appeal was docketed as *Markey v. Yardley Borough*, OOR Dkt. AP 2022-2548.

63.    On November 8, 2022, AORO Johnson, provided further response in the form a letter from the Borough's solicitor, indicating the copyrighted public records are protected by the Federal Copyright Act, original author is deceased[9], and the Borough was unable to obtain permission from the current copywrite holder(s).

64.    The OOR granted Plaintiff's motion and has stayed its proceedings pending the disposition of the federal copyright questions in this action.

65.    The Plaintiff intends to use the copyrighted public records for the purposes of government transparency and  accountability as well as to share copies with members of the media for news reporting.

66.    The Plaintiff believes and therefore avers his fair use would be non-commercial.

---

[9] Plaintiff located the obituaries of the author and his wife. Neither revealed the author was survived by children. Therefore, it is unclear who the current copywrite holder is at this point.

67.    The Plaintiff believes and therefore avers that his fair use would have little effect upon the potential market for or value of the copyrighted work.

68.    The works are visual compilations of building information regarding Mayor Harding's home. Works of such factual nature do not merit the same protection as a fictional movie for example. See *Video Pipeline v. Buena Vista Home Entertainment*, 342 F. 3d 191 (3d Cir. 2003).

## CAUSES OF ACTION

FIRST CLAIM FOR RELIEF RIGHT OF FREE SPEECH
U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
AS-APPLIED CHALLENGE TO DELETING FACEBOOK COMMENT
BY PAULA JOHNSON IN HER INDIVIDUAL CAPACITY

69.    Plaintiff repeats the allegations set forth at lines 1-48 as if fully set forth herein.

70.    By posting a Facebook comment on the Yardley Borough official Facebook page Plaintiff engaged in a clearly established constitutionally protected activity.

71.    By removing or deleting Plaintiff's Facebook comment, Defendant Paula Johnson, under color of law, deprived Plaintiff of his fundamental right of Free Speech in violation of the First and Fourteenth Amendments to the United States Constitution.

72.    The violation was prompted by ill will or spite towards the Plaintiff.

73.    The violation recklessly or callously disregarded the Plaintiff's Free Speech rights.

74.    Plaintiff is thus damaged in violation of 42 U.S.C. § 1983, and therefore entitled to damages, including punitive damages; declaratory and injunctive relief against continued enforcement and maintenance of Defendant's unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

SECOND CLAIM FOR RELIEF RIGHT OF FREE SPEECH
U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
AS-APPLIED CHALLENGE TO DELETING FACEBOOK COMMENT
BY CAROLINE THOMPSON IN HER INDIVDUAL CAPACITY

75.    Plaintiff repeats the allegations set forth at lines 1-48 and lines 69-74 as if fully set forth herein.

76.    Caroline Thompson, while clothed in her purported authority as Yardley Borough Council President, directed Paula Johnson to remove or delete Plaintiff's Facebook comment.

77.    Caroline Thompson had actual knowledge of Paula Johnson's violation of Plaintiff's Free Speech rights and Caroline Thompson acquiesced in that violation.

78.    By either directing  or acquiescing to removing or deleting Plaintiff's Facebook comment, Defendant Caroline Thompson, under color of law, deprived Plaintiff of his fundamental right of Free Speech in violation of the First and Fourteenth Amendments to the United States Constitution.

79.    The violation was prompted by ill will or spite towards the Plaintiff.

80.    The violation recklessly or callously disregarded the Plaintiff's Free Speech rights.

81.    Further violations of Plaintiff's Free Speech right are a highly predictable consequence of Defendant Caroline Thompson's established and maintained policies, practices, or customs that do not conform with the First and Fourteenth Amendments to the United States Constitution.

82.    Plaintiff is thus damaged in violation of 42 U.S.C. § 1983, and therefore entitled to damages, including punitive damages; declaratory and injunctive relief against continued enforcement and maintenance of Defendant's unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

THIRD CLAIM FOR RELIEF RIGHT OF FREE SPEECH
U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
AS-APPLIED CHALLENGE TO DELETING FACEBOOK COMMENT
BY BOROUGH OF YARDLEY, CAROLINE THOMPSON IN HER
OFFICIAL CAPACITY, AND PAULA JOHNSON IN HER OFFICIAL
CAPACITY

83.    Plaintiff repeats the allegations set forth at line 1-48 and lines 69-82 as if fully set forth herein.

84.    Yardley Borough Manager Paula Johnson or Council President Caroline Thompson made a deliberate choice to follow a

course of action to remove  or delete Plaintiff's Facebook comment, that choice represents an official policy by Defendant Yardley Borough.

85.    Alternatively, the violation was caused by a failure of Defendant Yardley Borough's policymakers to adopt a social media policy because such a violation is a highly predictable consequence without such as policy.

86.    Such an official policy or lack thereof was the cause of and the moving force behind the violation that deprived Plaintiff of his fundamental right of Free Speech in violation of the First and Fourteenth Amendments to the United States Constitution.

87.    Plaintiff is thus damaged in violation of 42 U.S.C. § 1983, and therefore entitled to damages; declaratory and injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.


FOURTH CLAIM FOR RELIEF – DECLARATORY COPYRIGHT ACT
FAIR USE 17 U.S.C. § 107
PHOTOGRAPHING/DUPLICATING PUBLIC RECORDS

88.    Plaintiff repeats the allegations set forth at lines 1-8 and lines 49-68 as if fully set forth herein.

89.    Plaintiff's photographing or otherwise copying of copyrighted public records non-commercial purposes of government transparency and  accountability is fair use.

90.    Plaintiff's photographing or otherwise copying of copyrighted public records purpose of sharing with members of the media for news reporting is fair use.

91.    Plaintiff is therefore entitled to declaratory relief pursuant to 28 U.S.C. § 2201.

## FIFTH CLAIM FOR RELIEF – DECLARATORY COPYRIGHT ACT LIABILITY FOR INFRINGEMENT 17 U.S.C. § § 502, 511 PHOTOGRAPHING/DUPLICATING PUBLIC RECORDS

92.    Plaintiff repeats the allegations set forth at lines 1-8, lines 49-68, and lines 88-91 as if fully set forth herein.

93.    Defendants would not be liable for copyright infringement by allowing Plaintiff to photograph or otherwise duplicate copyrighted public records.

94.    Defendants would not be liable for copyright infringement by duplicating copyrighted public records as requested by the Plaintiff pursuant to the RTKL.

95.    Plaintiff is therefore entitled to declaratory relief pursuant to 28 U.S.C. § 2201.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff request that judgment be entered in their favor and against Defendants as follows:

1. An order permanently enjoining defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the

injunction, from removing or deleting, in violation of the First and Fourteenth Amendments to the United States Constitution, Plaintiff's comments,

2. Declaratory relief consistent with the injunction,

3. Monetary damages, in an amount to be determined by the Court, to compensate Plaintiffs for the impact of a deprivation of fundamental rights against Defendants,

4. Punitive and exemplary damages, in an amount to be determined by the Court, against Defendants Thompson and Johnson individually to punish as well as deter each of them and others like them from committing such conduct in the future,

5. Cost of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988,

6. Declaratory relief on the questions of fair use and liability for infringement of copyright,

7. Any other relief as the Court deems just and appropriate.


I declare under penalty of perjury that the foregoing is true and correct. Signed this _13th_ day of _October_ ,
2022.

Earl J. Markey III
Pro Se
26 W. College Ave.
Yardley, PA 19067
Phone: 215-740-3243
earlmarkey@earlmarkey.com

DRAFT 10.31.22
DELIBERATIVE AND FOR DISCUSSION ONLY

BOROUGH OF YARDLEY
SOCIAL MEDIA POLICY

I.    PURPOSE:

To establish guidelines and practices for the use and management of the Borough of Yardley ("Borough") social media including establishing general standards for public participation. The Borough encourages the use of social media to further engage and inform their communities of activities, programs, projects, events, and alerts or emergencies. However, it has an overriding interest and expectation in ensuring that what is communicated on the borough's behalf on social media is appropriate. This policy may be amended at any time by the Borough.

II.    GENERAL

The official Yardley Borough website (YardleyBoro.com) will remain the Borough's primary and predominant Internet presence. When possible and/or appropriate, content posted to the Borough's social media will also be available on the Borough's website. Also, wherever possible, content posted to the Borough's social media sites should contain links directing users back to the Borough's official website for in-depth information, meeting agendas, forms, documents, or online services necessary to conduct business with the Borough.

"Social Media" shall mean a platform used for online communication that is open to response or comment. Rules are necessary to ensure that communications made on behalf of the Borough are property authorized and in correct form; that communications to the municipality by means of social media which can be viewed by the public are appropriate and pertinent; that all communications to the municipality are directed to the proper recipient; and that the outside sender is clearly and fully informed that a message to the Borough or its elected councilpersons/mayor received by means of social media is not a substitute for required reporting procedures.

Examples of social media platforms to which this policy applies includes but is not limited to
:    • Personal blogs and websites          • Flickr
     • Forums or message boards             • Snapchat
     • Facebook and Facebook Messenger      • LinkedIn
     • Myspace                              • TikTok
     • YouTube                              • Instagram
     • Twitter                              • VSCO

EXHIBIT A

DRAFT 10.31.22
DELIBERATIVE AND FOR DISCUSSION ONLY

As is the case for the Borough website, the Borough Manager, or her/his designee(s), will be responsible for the content and upkeep of any social media sites, and will approach the use of social media tools as consistently as possible:

- The Borough reserves the right to restrict or remove any content that is deemed in violation of this social media policy or any applicable law, at any time.
- In administering the Borough's social media, the Borough Manager will maintain a list of all Borough social media sites, including login and password information, and ensure that the Borough is able to immediately edit or remove content from social media sites, as necessary.
- Posting on social media sites of information protected by the copyright laws, without proper authorization by the copyright owner, is prohibited. Copyright protection applies to any document, photograph, video, software, or information unless it is specifically marked as public, not copyrighted, or "freeware." In the absence of any specific copyright markings, material or information should be considered copyright protected. The Borough assumes no responsibility for reviewing, ascertaining or policing copyrighted material that may be posted on social media sites by employees or other persons.

III.    POSTED COMMENTS POLICY

The following policy statement will be made available on social media sites and the Borough web page.

"The sole purpose of this site is to provide information concerning Yardley Borough, to its many residents, businesses and visitors. To that end, the Borough has disabled the ability to comment to the extent permitted by a particular social media platform. To the extent that the Borough maintains any social media on which disabling of commenting features are not permitted, the Borough social media is for moderated online discussions only and is not a public forum. Accordingly, all user comments must directly relate to information provided by the Borough. Any user who has general inquires, comments, requests, or other should communicate directly communicated to the Borough.

Any posting on the Borough's social media may be subject to disclosure under the Pennsylvania Right to Know Law, 65 P.S. § 67.101, *et seq.*, as well as any other public record or disclosure laws or discovery litigation. To request official records, you may email RTK@yardleyboro.com, call 215-493-6832 or go to yardleyboro.com. Any posting to the Borough's social will be maintained as required by the Municipal Records Act, 53 Pa.C.S. § 1381.

No user who posts any information on any Borough social media has any rights in the content posted. The Borough shall have all rights to and full permission for any content posted on its social media.

Comments, media, or other information posted to or displayed on any platform are subject to monitoring and review at any time Users have no expectation of privacy or confidentiality with respect to any content they post to the Borough's social media. This includes any information

DRAFT 10.31.22
DELIBERATIVE AND FOR DISCUSSION ONLY

made available through a user's privacy setting on his or her own social media.

Monitoring of social media pages will not occur 24/7, and as such, the Borough is not liable for inappropriate or offensive comments that may be posted during a non-monitored timeframe.

The Borough will not edit or otherwise modify any content posted by a user on any social media platform where the Borough is unable to disable the comment functioning. The only action that may be taken by the Borough is removal of content or comments that contain the following:

- Comments that do not directly relate to the information or comments posted or displayed by the Borough.
- Vulgar or obscene language.
- Defamatory content.
- False, misleading or deceptive information or media.
- Personal attacks or threatening or harassing activity of any kind.
- Spam or links to other sites.
- Any content that constitutes, promotes, fosters, or perpetuates discrimination based on race, creed, color, age, religion, gender, marital status, genetics, status with regard to public assistance, national origin, physical or intellectual disability or sexual orientation, or any other classification protected by law.
- Any comment that advocates or promotes illegal activity.
- Promotion of commercial services, transactions, or products, or political organization.
- Non-public information concerning securities or that constitutes insider-trading or forwarding looking statements.
- Content that infringes on copyrights, trademarks, trade secrets, licenses, or any other intellectual property of another.
- Personally Identifiable Information (PII) such as address, phone number, social security number, or other sensitive information.
- Personal health information protected by the Health Insurance Portability and Accountability Act (HIPAA)
- Information that may compromise the safety, security or proceedings of public systems or any criminal or civil investigations.

The Borough will delete any comment that violates this Policy. Users will be blocked and/or reported to the social media site's representative. Additionally, the Borough's social media sites hosted by Facebook and Twitter are, additional to this Policy, governed by a separate Privacy Policy and Statement of Rights and Responsibilities.

This policy shall apply to all Borough representatives, agencies and departments as well as any affiliated government or non-government agency or official permitted by the Borough to post on Township social media sites; and any person, business or organization that interacts with the Borough via any of its social media platforms.

IV.    PERSONAL USE OF SOCIAL MEDIA

DRAFT 10.31.22
DELIBERATIVE AND FOR DISCUSSION ONLY

BOROUGH OF YARDLEY
SOCIAL MEDIA POLICY: ELECTED OFFICIALS

### I.    PURPOSE

This policy provides guidance to Borough of Yardley ("Borough") elected officials who choose to engage with citizens using _personal and professional_ (i.e. related to the position and responsibilities as Town Council Member or Mayor) social media platforms, including but not limited to, Facebook, Twitter, Instagram, and YouTube. This policy will be reviewed annually by Town Council Members and the Mayor.

1. Town Council Members and the Mayor must maintain separate personal and professional (i.e. related to the position and responsibilities as Town Council Member/Mayor) social media accounts so that Town- related posts and personal posts are not intermingled.

   - Clarify with a statement on each personal platform, with this notification: "Opinions on this account are my own and do not reflect the opinions of the Borough of Yardley."
   - Personal accounts should _not_ use, or reference official elected titles or town contact information including email.
   - Professional social media sites should include this notification: "Posts to and from this page are subject subject to disclosure under the Pennsylvania Right to Know Law, 65 P.S. § 67.101, _et seq._, as well as any other public record or disclosure laws or discovery litigation.."

2. Town Council Members/Mayor must be mindful that posting content on personal and professional social media accounts regarding Town-related matters could inadvertently result in the violation of PA Open Meetings Laws if sufficient numbers of other public officials engage on the post, resulting in a quorum. If this occurs, the online conversation should immediately cease with no further posts by the officials and the Town's Manager should be notified.

3. Town Council Member/Mayor professional social media platforms will be considered a limited public forum. The First Amendment protects individuals from government censorship in a public forum. Therefore, posts and comments should be removed on these platforms only if they include:
   - Content that promotes discrimination
   - Sexual content
   - Commerce solicitations (ads)
   - Information that will compromise public safety
   - Endorsement of illegal behavior
   - Protected medical information

4. Council Members/Mayor are prohibited from deleting posts and related comments regarding any Town-related matters to avoid violating PA Public Records Law.

DRAFT 10.31.22
DELIBERATIVE AND FOR DISCUSSION ONLY

5. It is anticipated that from time to time, Council Members/Mayor will have access to information that is considered privileged or confidential. Elected officials must not reveal any confidential or privileged information about the Town, its constituents, its employees, or its contractors on social media platforms.

6. Town Council/Mayor members should direct members of the public to the Town's official digital platforms in order to respond to a social media inquiry, the following response is suggested:

   "Please contact the Borough of Yardley directly at INSERT HERE.

**Code of Conduct: Best Practices for Elected Officials**

To encourage public engagement and constructive dialogue, while maintaining the dignity and integrity of elected office, the following best practices help to ensure that the official use of social media by elected officials is done so in a responsible manner.

Borough of Yardley Elected Officials are encouraged to:

1. Be honest and accurate when posting information, and should quickly correct any mistakes, misstatements and/or factual errors in content upon discovery.

2. Promote constructive dialogue and civic engagement.

   a. Avoid undignified remarks on social media platforms and on others' social media platforms. Undignified remarks are those that "lack seriousness in manner, appearance or language."

   b. Avoid discourteous remarks. Discourteous remarks include those that display "unpolished manners or disrespect for others."

   c. Refrain from disruptive statements. A disruptive statement is one that contains personal attacks, profanity, commercial advertising or content which is entirely off-topic.

   d. Avoid personal attacks, which are disparaging remarks that attribute motives to a person's action. Statements of fact, or of your own opinion are generally not personal attacks.

3. Consider whether liking, sharing, retweeting or commenting on social media posts could be perceived as an official endorsement by the Town, its employees, constituents, other public officials, suppliers, vendors, or contractors.

4. Regularly monitor remarks, tags, hashtags, and retweets posted by others to all personal and professional social media platforms.

DRAFT 10.31.22
DELIBERATIVE AND FOR DISCUSSION ONLY

BOROUGH OF YARDLEY
SOCIAL MEDIA POLICY: EMPLOYEE POSTING ON OFFICIAL BOROUGH SITES

Borough manager or designees must approve all posts, including content sharing or reposting. The individuals who approve and post should place their initials at the end of each post for accountability.

Designees and staff will only post respective department specific information.

Designees and staff will only post general information during working hours; emergency information may be updated by designees outside of these parameters.

Designees and staff will not respond to inquiries on social media; all inquiries will be redirected to EMAIL ADDRESS.

Negative comments will be removed if they contain:
- Comments that do not directly relate to the information or comments posted or displayed by the Borough.
- Vulgar or obscene language.
- Defamatory content.
- False, misleading or deceptive information or media.
- Personal attacks or threatening or harassing activity of any kind.
- Spam or links to other sites.
- Any content that constitutes, promotes, fosters, or perpetuates discrimination based on race, creed, color, age, religion, gender, marital status, genetics, status with regard to public assistance, national origin, physical or intellectual disability or sexual orientation, or any other classification protected by law.
- Any comment that advocates or promotes illegal activity.
- Promotion of commercial services, transactions, or products, or political organization.
- Non-public information concerning securities or that constitutes insider-trading or forwarding looking statements.
- Content that infringes on copyrights, trademarks, trade secrets, licenses, or any other intellectual property of another.
- Personally Identifiable Information (PII) such as address, phone number, social security number, or other sensitive information.
- Personal health information protected by the Health Insurance Portability and Accountability Act (HIPAA)
- Information that may compromise the safety, security or proceedings of public systems or any criminal or civil investigations.

You must receive prior approval of any external photos used in posts; photos of specific person(s) must have coinciding photo release form on file.

*READ AND REVIEWED:*

DRAFT 10.31.22
DELIBERATIVE AND FOR DISCUSSION ONLY

Name:_____Signature:_____Date: _____

DRAFT 10.31.22
DELIBERATIVE AND FOR DISCUSSION ONLY

Social media plays a significant role in the personal lives of numerous Borough personnel. However, it must be formally and universally recognized that the personal use of social media has the potential to impact the Township, as well as individual members serving in their official capacity. As such, this policy provides information of a precautionary nature as well as restrictions on the use of social media by Borough personnel.

Borough Personnel are professionals and represent the Borough in all aspects of their lives and should conduct themselves publicly in accordance with the responsibilities of public service. Personnel must maintain public confidence, not only in her or his professional capacity, but also in her or his online activities. Moreover, as personnel are necessarily held to a higher standard than general members of the public, the online activities of personnel of the Borough of Yardley shall reflect such professional expectations and standards.

The Borough recognizes that personal social media use that occurs outside of working hours and off Borough premises are largely unrelated to the Borough; however, certain types of communication by virtue of its subject matter may relate enough to the Borough to result in review and discipline.

1. Use of personal social media during working hours or while on Borough business is prohibited, whether or not such use is through a personal electronic device or Borough computers, cell phones, or other technology resource. Employees may use their own electronic devices during unpaid breaks. Social Media sites may be blocked on work computers for employees who are not utilizing the sites as authorized on behalf of the Borough. All postings must follow Borough policies including the anti-discrimination and anti-harassment policies. Do not post any information that includes discriminatory, harassing, or threatening remarks or images, information that could create a danger of disruption in the work environment, knowingly or recklessly false or defamatory statements about a person or organization, or similar inappropriate or unlawful conduct.

2. No personnel are authorized to use the Yardley Borough seal, letterhead, or any representation logo in connection with social media use unless approved by the Borough Manager or designee.

3. Employees are encouraged to maintain a clear distinction between their personal social media use and their professional lives. Where an employee identifies himself or herself as Borough employee, his or her online opinions may be interpreted as the opinions of the Borough. Employees may not act in any manner that creates a false impression that they are communicating on behalf of or as a representative of the Borough. Generally, to avoid misleading statements, employees are encouraged to include a disclaimer, such

DRAFT 10.31.22
DELIBERATIVE AND FOR DISCUSSION ONLY

as: "The views expressed on this site are my own and do not reflect the views of my employer." Personnel may not make any statements, speeches, appearances, and endorsements on behalf of the Borough; or publish materials that could reasonably be considered to represent the views or positions of this Borough.

4. Employees shall not use their official Borough email address for any reason not related to Borough business. Including non-work-related business, personal use, or for creating or using a social media account.

5. Borough personnel should be aware that privacy settings and social media sites are constantly in flux, and they should never assume that personal information posted on such sites is protected.

V.    REPORTING VIOLATIONS

Personnel who become aware of or have knowledge of a posting or of any website or webpage in violation of the provision of this policy or any Borough Policy, including the anti-harassment or anti-discrimination policies, should notify his or her supervisor, or other individual in accordance with Borough Policies.

Personnel are prohibited from taking negative action against any individual for reporting a possible deviation from this policy or for cooperating in an investigation.

VI.    **Consequences of Misuse:**

Violations of this policy can result in disciplinary action, up to and including termination of employment.

*READ AND REVIEWED:*

**Name:** _____ **Signature:** _____ **Date:** _____

DRAFT 10.31.22
DELIBERATIVE AND FOR DISCUSSION ONLY

*READ AND REVIEWED:*

Name:_____Signature:_____Date: _____

