**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EARL J. MARKEY III,<br><br>*Plaintiff*,<br><br>v.<br><br>BOROUGH OF YARDLEY, CAROLINE THOMPSON, individually and in her official capacity, and PAULA JOHNSON, individually and in her official capacity,<br><br>*Defendants.* | **CIVIL ACTION**<br>**NO. 2:22-cv-04307** |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO PARTIALLY DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO R. 12(b)(1) AND R. 12(b)(6)**

## PRELIMINARY STATEMENT

Defendants, Borough of Yardley ("Yardley"), Caroline Thompson ("Thompson"), and Paula Johnson ("Johnson") (collectively, "Defendants"), file this motion to partially dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). Specifically, Earl Markey ("Plaintiff") alleges individual-capacity liability for Defendants Thompson and Johnson under 42 U.S.C.S. § 1983 despite neither violating "clearly established law" and both being entitled to qualified immunity. Plaintiff also alleges official-capacity liability for Defendants Thompson and Johnson under 42 U.S.C.S. § 1983 despite also naming the Borough of Yardley as a Defendant, thereby rendering their inclusion redundant. Plaintiff further alleges that his prospective duplication of copyrighted materials under Pennsylvania's

Right-to-Know Law ("RTKL") constitutes "fair use" under the federal Copyright Act despite fair use only being available as an affirmative defense to a copyright infringement lawsuit. Lastly, Plaintiff's claims related to the Copyright Act lack subject matter jurisdiction as a federal defense does not satisfy federal question jurisdiction, the parties in this matter are not diverse, and Plaintiff's Copyright Act claims do not share a common nucleus of operative facts with Plaintiff's claims arising under the First Amendment. For these reasons, Defendants respectfully request that the Court dismiss Counts One, Two, Four, and Five of Plaintiff's Amended Complaint in their entirety and Count Three as to Defendants Johnson and Thompson.

## STATEMENT OF FACTS[2]

### I.    FACEBOOK POST AND POLICY

Yardley Borough maintains a Facebook page for "Official News and notes on everything Yardley Boro!" Defendant Yardley Borough has not adopted a social media policy to govern its official Facebook page, and comments presenting viewpoints critical of Yardley Borough officials have been removed or deleted from the official Facebook page, including instances where posts containing entire threads of critical comments were removed or deleted.

In addition to "Official News", Defendant Yardley Borough uses the Facebook page to advocate for causes and viewpoints favored by Yardley Borough Council or staff. For example, on October 12 at 10:35 AM, the following post appeared on the Facebook page:

> As you drive down South Main Street this week, you may notice a few picture boards on the lamp posts. Yardley Borough remembers Kayden. Kayden's Korner is dedicated to the protection of children innocently involved in domestic custody challenges. It is the mission of Kayden's Korner to affect judicial reform of the family court system through the

---

[1] Defendants sets forth the relevant facts as alleged in the Amended Complaint for purposes of this Motion only and reserve the right to respond to and deny all facts and allegations if the Motion is denied.
[2] Defendants attach Plaintiff's Amended Complaint as Exhibit A.

education of government to the signs of domestic abuse and shine a light on the impact of mental illness to make the health and safety of children the singular concern of the court system.

Defendants permitted comments to such posts. For example, on October 16, 2022 at 4:40 AM, Kaydens Korner Foundation commented on the post: "Krit Danysh-Ford get the house to pass it through committee get it to the floor for Vote then get it to our governors desk to sign. Pa would get millions to adopt the law. Kauffman the Republican judicial committee chair is the hold up. This is common sense. Nothing more."

On October 24, 2022 at 12:47 PM, Caroline Thompson, President of Council and an elected councilwoman of the Borough of Yardley, published a "brief informational piece" about an upcoming ballot referendum on her Yardley Borough Councilwomen Caroline Thompson official Facebook page. Plaintiff commented on this post and his comments were not removed or deleted. Later, Caroline Thompson commented on Plaintiff's "Official page of Yardley Borough Republican Committeeman Earl Markey."

On October 26, 2022, Plaintiff commented on a recording of the October 18, 2022 Yardley Borough Council meeting that was posted on Yardley Borough Official Facebook Page, stating:

> Appointed Councilman Matt Curtin wants to raise your property taxes by two mills. Stop unelected, out of touch investment bankers, like Matt Curtin, from volunteering your hard-earned money for higher taxes. Vote YES on the referendum to reduce the size of Yardley Borough Council. https://patch.com/pennsylvania/yardley/taxhike-looming-yardley-borough-residents

Upon noticing the comment, Defendant Paula Johnson, the Manager and Agency Open Records Officer of the Borough of Yardley and an administrator of the Facebook page, flagged the comment as a personal attack, contacted Defendant Thompson to request permission to remove the comment, and then removed the comment after Defendant Thompson gave her permission.

The comment was removed without consulting the six other members of Borough Council. Defendants only allowed the Plaintiff to repost his comment after commencement of this action.

In response to this action, Yardley Borough Council proposed a Yardley Borough Social Media Policy Draft that includes a "Posted Comments Policy" that states, "the Borough social media is for moderated online discussions only and is not a public forum." The policy further states that the Borough may "remove comments that contain . . . false, misleading or deceptive information or media . . . personal attacks or threatening or harassing activity of any kind . . . [and] links to other sites." It concludes by stating that "[t]he Borough will delete any comment that violates this Policy. Users will be blocked and/or reported to the social media site's representative."

II.     PENNSYLVANIA RIGHT-TO-KNOW LAW

The Plaintiff frequently uses the Pennsylvania Right-to-Know Law ("RTKL") to gain access to public records of Yardley Borough. At the September 6, 2022 and September 20, 2022, Council meetings, Dawn Perlmutter alleged Yardley Mayor Chris Harding made significant changes to the facade of his home in the Yardley Borough Historic District without first being required to obtain approval from the Historical Architecture Review Board or zoning and building permits. On September 29, 2022, Dawn Perlmutter requested to inspect files for various properties including Mayor Harding's home pursuant to the RTKL. On October 4, 2022, the Borough issued a response indicating that engineering and architectural drawings contained in the file are protected by the federal Copyright Act, that the original author is deceased, and that the Borough was unable to obtain permission from the current copywrite holders. Two days later, Perlmutter was allowed to inspect but not photograph the records.

On October 7, 2022, Plaintiff requested access to inspect and photograph the copyrighted engineering and architectural drawings in Defendant Yardley Borough's possession pursuant to the RTKL by written request to the Agency Open Records Officer (AORO) Paula Johnson. On November 5, 2022, Defendant Johnson confirmed Plaintiff's appointment to inspect the records but indicated Plaintiff would not be allowed to photograph "the architectural drawings protected by copyright statute." On November 7, 2022, Plaintiff attended the inspection appointment and was not allowed to photograph copyrighted public records. On November 7, 2022, Plaintiff appealed to the OOR challenging AORO Johnson's determination as to the copyrighted public records. At the same time, Plaintiff filed a motion to stay the OOR appeal pending the disposition of the federal copyright questions in this action. The OOR granted Plaintiff's motion and has stayed its proceedings pending the disposition of the federal copyright questions in this action. The Plaintiff intends to use the copyrighted public records for the purposes of government transparency and accountability as well as to share copies with members of the media for news reporting.

Plaintiff's Complaint alleges five counts: (1) a 42 U.S.C. § 1983 violation of Plaintiff's right to freedom of speech by Defendant Paula Johnson in her individual capacity; (2) a 42 U.S.C. § 1983 violation of Plaintiff's right to freedom of speech by Defendant Caroline Thompson in her individual capacity; (3) a 42 U.S.C. § 1983 violation of Plaintiff's right to freedom of speech by Paula Johnson and Caroline Thompson in their official capacities and the Borough of Yardley; (4) declaratory relief pursuant to 28 U.S.C. § 2201 that Plaintiff's prospective copying of copyrighted public records constitutes fair use; and (5) declaratory relief pursuant to 28 U.S.C. § 2201 that Defendants would not be liable for copyright infringement by duplicating copyrighted public records pursuant to the RTKL. Plaintiff's Complaint also vaguely alleges that the Borough's newly adopted social media policy is unconstitutional.

# STANDARD OF REVIEW

## I.  STANDARD OF REVIEW FOR R. 12(B)(1) MOTION TO DISMISS

"Federal courts are courts of limited jurisdiction . . . [and] possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (alterations added) (internal citations omitted). Subject matter jurisdiction "concerns a court's competence to adjudicate a particular category of cases," Wachovia Bank, Nat'l Ass'n v. Schmidt, 546 U.S. 303, 316 (2006), and Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the court to dismiss an action for lack of subject matter jurisdiction. A federal court can exercise subject matter jurisdiction through federal question jurisdiction, diversity jurisdiction, or supplemental jurisdiction, and "[t]he burden of demonstrating that a case falls within the jurisdiction of the federal court rests upon the party asserting jurisdiction. In re Cmty. Bank N. Va. Mortg. Lending Practices Litig., 911 F.3d 666, 671 (3d Cir. 2018) (internal citations omitted).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack. Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack challenges subject matter jurisdiction without disputing the facts alleged in the Complaint and requires the court to "consider the allegations of the complaint as true." Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). These allegations are to be construed in the light most favorable to the Plaintiff to determine if he has sufficiently alleged a basis for subject matter jurisdiction. See Gould Elecs., Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000). A factual challenge, on the other hand, attacks the factual allegations underlying the Complaint's assertion of jurisdiction, either through the filing of

an answer or "otherwise present[ing] competing facts." <u>Constitution Party of Pa. v. Aichele</u>, 757 F.3d 347, 358 (3d Cir. 2014).

## II.    STANDARD OF REVIEW FOR R. 12(B)(6) MOTION TO DISMISS

Generally, when evaluating motions under R. 12(b)(6), the Court is required to accept as true all well pleaded facts alleged by Plaintiff, and "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim" in determining whether Plaintiff has articulated a claim. <u>Spanier v. Kane</u>, 34 F.Supp. 3d 524, 526 (M.D. Pa. 2014). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 229 (3d Cir. 2008).

The moving party bears the burden of showing that no claim has been stated, <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, and accepting all the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). The facts alleged must be sufficient to "raise a right to relief above the speculative level." <u>Id.</u> at 555. This requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the necessary elements]" of the plaintiff's cause of action. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> at 555 (internal quote marks and brackets omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009).

The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). As a general rule, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. In Re Burlington Coat Factory Sec. Litig, 114 F.3d 1410 (3d Cir. 1997). However, an exception to this rule is if the document is integral to or explicitly relied upon in the complaint and may be considered without converting the motion into one for summary judgment. Id. at 1426. If a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 103 (3d Cir. 2002).

## LEGAL ARGUMENT

I.  COUNTS ONE AND TWO OF PLAINTIFF'S COMPLAINT FAIL TO STATE A CLAIM AS TO INDIVIDUAL DEFENDANTS THOMPSON AND JOHNSON BECAUSE THEY ARE ENTITLED TO QUALIFIED IMMUNITY.

To state a claim under 42 U.S.C.S. § 1983, a plaintiff must establish that the Defendant, acting under color of state law, deprived the Plaintiff of a right secured by the United States Constitution. Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995). In order to assert the deprivation of a federal right, the alleged conduct must be fairly attributable to the State. Cooper v. Muldoon, 2006 U.S. Dist. Lexis 23388, at *4 (Pa. Ed. April 26, 2006), citing Lugar v. Edmondson Oil Co., 457 U.S. 922. This requires that the deprivation be caused by state action and that the party charged with causing the deprivation be considered a state actor. West v. Atkins, 487 U.S. 42, 49 (1988). Generally, state employment is sufficient to render a Defendant a state actor. Id. at 49. To bring a claim against a Defendant in their individual capacity, the

Defendant "must have personal involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

After the personal involvement of a state actor has been established, a Defendant being sued in their individual capacity is entitled to claim qualified immunity. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions", Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011), and "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 337 (1986). A government official can claim qualified immunity "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft, 563 U.S. at 1155, citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). As qualified immunity provides immunity from suit, the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (alteration added). Defendants asserting qualified immunity have the burden to prove that the doctrine applies. Halsey v. Pfeiffer, 750 F.3d 273, 288.

A government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would [have understood] that what he is doing violates that right." Ashcroft, 563 U.S. at 741 (alterations in original), quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987). While the Supreme Court does not require a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft, 563 U.S. at 741. Additionally, "clearly established law" is not to be defined by a court at a high level of generality. Id. at 742 ("The general proposition . . . that an unreasonable search or seizure violates the Fourth

Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."); White v. Pauly, 580 U.S. 73, 79 (2017) ("Today, it is again necessary to reiterate the longstanding principle that clearly established law should not be defined at a high level of generality.") (internal citations and quotations omitted). Otherwise, "Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." Anderson, 483 U.S. at 639.

The interaction between social media and the First Amendment is an entirely new area of law. See, e.g., Blackwell v. City of Inkster, No. 2:21-CV-10628-TGB-EAS, 2022 U.S. Dist. LEXIS 61206, at *37 (E.D. Mich. Mar. 31, 2022) (noting that "there is a dearth of Sixth Circuit authority addressing whether blocking critics and deleting their comments on municipal Facebook pages violates the First Amendment, and every court to consider the issue has noted its novelty."). Indeed, the Third Circuit has yet to take up the issue of whether, and to what extent, the blocking of comments on municipal social media accounts violates the First Amendment. Further, given the unsettled nature of the law, courts that have considered the matter have repeatedly granted qualified immunity to Defendants named in their individual capacities. See, e.g., Kallinen v. Newman, No. 4:22-CV-652, 2022 U.S. Dist. LEXIS 128520, at *19 (S.D. Tex. July 20, 2022) ("[Defendant] is entitled to qualified immunity because there was no clearly established law that made the Facebook campaign page a government-created forum subject to First Amendment protection."); Blackwell, 2022 U.S. Dist. LEXIS 61206, at *38 ("While, as [Plaintiff] points out . . . the right to free expression in public forums has been clearly established for decades, the applicability of those doctrines to social media is anything but. Therefore, [Defendant] is entitled to qualified immunity."); Garnier v. O'Connor-Ratcliff, 41 F.4th 1158, 1184 (9th Cir. 2022)

("Given the novelty of applying the First Amendment and state action doctrines implicated here to the burgeoning public fora of social media, we cannot say that reasonable officials in the [Defendant's] position were on notice that blocking the [Plaintiffs] from individual government officials' public social media pages could violate the First Amendment.").

Here, Plaintiff's assertion is unfounded that "[b] y posting a Facebook comment on the Yardley Borough official Facebook page Plaintiff engaged in a clearly established constitutionally protected activity." Existing precedent has not placed "beyond debate" the issue of whether posting a comment on a borough's official Facebook page constitutes First Amendment protected speech, nor are the contours of this right sufficiently clear that a reasonable official would understand that removing this comment violates that right. Indeed, Plaintiff's Complaint implicitly admits as much by defining the right at such a high level of generality. See, e.g., Amended Complaint, ¶ 36 ("The government may not silence speech because it criticizes government officials or employees, or their favorite ideas or initiatives, even if that speech does so in ways that many people may find unpleasant.") While Plaintiff's sweeping statements regarding the First Amendment may be true, defining the right at such a high level of generality for purposes of qualified immunity analysis is explicitly proscribed by the Supreme Court and "is of little help in determining whether the violative nature of particular conduct is clearly established." Analyzing Defendants conduct under the particularized analysis required by Ashcroft and its progeny, it is evident that Defendants Thompson and Johnson were engaging in an area rife with open legal questions that have yet to even be addressed by the Third Circuit. Further, when these novel questions have been addressed by other circuits, these courts have freely dismissed individual-capacity claims as meritless. As Defendants' conduct plainly did not violate clearly established law, both are entitled to qualified immunity and Plaintiff's claims against them in their individual capacities must be dismissed.

II.     COUNT THREE OF PLAINTIFF'S COMPLAINT AGAINST DEFENDANTS THOMPSON AND JOHNSON IN THEIR OFFICIAL CAPACITY MUST BE DISMISSED AS REDUNDANT.

Under 42 U.S.C. § 1983, individual capacity suits "seek to recover money from a government official, as an individual, for acts performed under color of state law," Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988), whereas official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. New York City Dep't of Social Services, 436 U.S. 658, 690 n.55 (1978). Therefore, claims against both the government official and the government entity are duplicative. Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity . . . It is not a suit against the official personally, for the real party in interest is the entity."); Gregory, 843 F.2d at 120 ("It follows therefore that the claims here, insofar as they are against the defendant officials in their official capacities, are only a duplication of the counts asserted against the Township itself."); Rosario v. Williams, No. 13-1945, 2014 U.S. Dist. LEXIS 11340, at *19-20 (E.D. Pa. Jan. 29, 2014) ("Because the City is a party to this case, the claims against the [individual] Defendants in their official capacities will, therefore, be dismissed with prejudice as redundant.").

Here, Plaintiff brings claims both against Borough representatives in their official capacities and the Borough itself. Count Three of Plaintiff's Complaint against Defendants Thompson and Johnson, however, are not against the officials personally, as the real party in interest is the Borough of Yardley, a named Defendant in this matter. As the claims against Thompson and Johnson in their official capacities are duplicative of the claims against the Borough, must be dismissed.

III.    COUNTS FOUR AND FIVE OF PLAINTIFF'S COMPLAINT MUST BE
        DISMISSED BECAUSE FAIR USE IS A DEFENSE TO A COPYRIGHT ACT
        CLAIM AND PLAINTIFF IS NOT DEFENDING SUCH A CLAIM.

17 U.S.C.S. § 107 states that "the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching . . . , scholarship, or research, is not an infringement of copyright." However, fair use is a defense to a claim of copyright infringement. Harper & Row, Publrs. v. Nation Enters., 471 U.S. 539, 561 (1985) (stating that Congress "structured the provision as an affirmative defense"); Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey, 497 F. Supp. 2d 627, 634 (E.D. Pa. 2007) ("In the event that infringement has occurred, an infringer may be excused from liability under the doctrine of fair use."); Malibu Media, LLC v. Doe, No. 12-2078, 2013 U.S. Dist. LEXIS 55985, at *11 (E.D. Pa. Mar. 6, 2013) ("Section 107 of the 1976 Copyright Act provides for a 'fair use' defense in a copyright infringement suit."). In other words, the use of a copyrighted work can only be found to be fair use after the copyright holder initiates a claim against the user of the work. Further, the drafters of the Copyright Act refused to create "presumptive categories of fair use," rather structuring the fair use provision to require case-by-case analysis. Harper & Row, 471 U.S. at 561.

Here, Plaintiff is not defending against a claim of copyright infringement. Rather, Count Four of Plaintiff's Complaint asks the Court to declare that Plaintiff's copying of copyrighted public records for the non-commercial purposes of government trailable nsparency and accountability and to share these records with members of the media for news reporting constitutes fair use. See Amended Complaint, ¶ 89-90. Count Five of Plaintiff's Complaint would have this Court declare that "Defendants would not be liable for copyright infringement by duplicating copyrighted public records as requested by the Plaintiff pursuant to the RTKL." (Id. at ¶ 94). In other words, Plaintiff is asking this Court to declare, prior to the initiation of a copyright

infringement suit and without the participation of the copyright holder, that both Plaintiff and Defendants are entitled to assert a "presumptive category of fair use" under Pennsylvania's Right-to-Know Law, a request that flies in the face of well-settled jurisprudence on the doctrine of fair use.

Moreover, Plaintiff's requested relief raises a number of questions that have already been resolved by Congress' mandate that fair use be used as an affirmative defense and analyzed on a case-by-case basis. For example, does Plaintiff's requested relief apply only to the specific engineering and architectural drawings at issue here, or is Plaintiff granted a blanket exemption from the strictures of the Copyright Act? If the former, can the Borough expect to be hauled in to court each time it declines to expose itself to liability for copyright infringement? If the latter, does Plaintiff's requested relief apply to all individuals, or is Plaintiff afforded special status under the Copyright Act? Considering these questions even momentarily demonstrates the unworkability of Plaintiff's requested relief, and when paired with the fact that Plaintiff is attempting to use an affirmative defense offensively, it becomes clear that Counts Four and Five of Plaintiff's Complaint must be dismissed.

IV. COUNTS FOUR AND FIVE OF PLAINTIFF'S COMPLAINT LACK SUBJECT MATTER JURISDICTION AND MUST BE DISMISSED

It is well-settled that subject-matter jurisdiction can be established in three ways: federal question jurisdiction, diversity jurisdiction, or by operation of supplemental jurisdiction. In re Cmty. Bank N. Va. Mortg. Lending Practices Litig., 911 F.3d 666, 671 (3d Cir. 2018). Counts Four and Five of Plaintiff's Complaint, however, do not meet any of these prerequisites and must therefore be dismissed.

a. *Federal Question Jurisdiction*

District courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.S. § 1331. In order for a federal court to exercise federal question jurisdiction over a cause of action, a "right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." Franchise Tax Bd. v. Constr. Laborers Vacation Tr., 463 U.S. 1, 10-11 (1983). However, a potential federal *defense* is not enough to create federal jurisdiction under 28 U.S.C.S. § 1331. Chi. Tribune Co. v. Bd. of Trs. of the Univ. of Ill., 680 F.3d 1001, 1003 (7th Cir. 2012). In Tribune, a newspaper sued after a university refused to provide documents under §7(1)(a) of the Illinois Freedom of Information Act,[3] the university having determined that the documents were exempted from disclosure under the federal Family Education Rights and Privacy Act of 1974 ("FERPA"). Id. at 1002. In dismissing the case for lack of subject matter jurisdiction, the Appellate Division first noted that that "the claim for the documents arises under state law, and *only* state law; the [newspaper's] request for the information does not depend on even a smidgeon of federal law." Id. 1004 (emphasis in original). The Court continued by acknowledging that while the meaning of FERPA is a question of federal law, "before a court reaches any federal issue, it must resolve the meaning of §7(1)(a) itself, and that's a question of Illinois law." Id. The Court also stated that a Plaintiff "cannot use 28 U.S.C. §2201, the declaratory-judgment statute, to have a federal court blot out a potential federal defense to its own potential state-law suit." Id. at 1003.

Here, the causes of action in Counts Four and Five of Plaintiff's Complaint do not "arise under" the Constitution, laws, or treaties of the United States. Like the newspaper in Tribune, Plaintiff's claim for documents arises exclusively under Pennsylvania law and his request does not

---

[3] §7(1)(a) of the Illinois Freedom of Information Act, 5 Ill. Comp. Stat. Ann. 140/7, makes "[i]nformation specifically prohibited from disclosure by federal or State law or rules and regulations implementing federal or State law" exempt from disclosure under the law.

depend on even a smidgeon of federal law. While the Borough's decision not to permit copying of the documents is based on federal law, this decision necessarily hinges on its interpretation of the state law under which disclosure is governed. Therefore, Plaintiff's request for relief arises under state law, thereby foreclosing federal question jurisdiction. Moreover, Plaintiff is not only asking a federal court to interpret a state statute but is asking the court to do so when the issue *has already been resolved by a state court*. Indeed, this may be the only material way in which this matter differs from <u>Tribune</u>. While Plaintiff cites <u>Ali v. Phila. City Planning Comm'n</u>, 125 A.3d 92 (2015) to support his contention that duplication of copyrighted materials by the Borough implicates potential liabilities under the Copyright Act, see Amended Complaint, ¶ 56, Plaintiff neglects to mention that this issue was resolved by the <u>Ali</u> court. The court concluded, in relevant part:

> [T]hat the Commission appropriately invoked the Copyright Act as a basis to limit access to the records at issue by redacting copyrighted information from the duplicates that it provided to Ali in response to his RTKL request . . . [H]owever, we reject OOR's determination to the extent that it concluded that the redacted information is exempt or nonpublic under the RTKL. There is material difference between an exempt and/or nonpublic record, which an agency is not required to provide access to at all under the RTKL, and a public and nonexempt record that may be subject to limited access under the RTKL. Copyrighted information falls into the latter category. The Copyright Act limits the level of access to a public record only with respect to duplication, not inspection. The public record must, therefore, still be made available for inspection under the RTKL, allowing the public to scrutinize a local agency's reliance on or consideration of the copyrighted material.

<u>Ali</u>, 125 A.3d  at 105. Therefore, the court held that, **under the RTKL**, a state agency is not required to duplicate copyrighted material. Unsatisfied with this outcome, Plaintiff now seeks to have this Court override a state court's interpretation of state law to compel production of documents. Plainly, though, a federal question does not exist in this matter.

    b. *Diversity Jurisdiction*

28 USCS § 1332 provides that federal courts will have jurisdiction where there is a diversity of citizenship between the parties and when the amount in controversy exceeds $75,000. Here, there is common state citizenship in the state of Pennsylvania. Further, Plaintiff does not plead that the amount in controversy exceeds $75,000. Therefore, this Court cannot exercise diversity jurisdiction over this matter.

   c.   *Supplemental Jurisdiction*

The supplemental jurisdiction statute, 28 U.S.C. §1367, enables federal district courts to entertain claims not otherwise within their adjudicatory authority when those claims "are so related to claims . . . within [federal-court competence] that they form part of the same case or controversy." Artis v. District of Columbia, 138 S. Ct. 594, 597 (2018). "The Third Circuit has interpreted § 1367 to mean that 'a district court may exercise supplemental jurisdiction where state-law claims share a 'common nucleus of operative fact' with the claims that supported the district court's original jurisdiction.'" Dimensional Music Publ'g, LLC v. Kersey, 448 F. Supp. 2d 643, 651 (E.D. Pa. 2006), quoting De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 308 (3d Cir. 2003). Put simply, supplemental jurisdiction can be exercised when two claim share "critical background fact[s]." Nanavati v. Burdette Tomlin Mem'l Hosp., 857 F.2d 96, 105 (3d Cir. 1988). Whether a court will exercise supplemental jurisdiction over a plaintiff's state-law claims is wholly within the court's discretion. Growth Horizons, Inc. v. Del. County, 983 F.2d 1277, 1284 (3d Cir. 1993); Mullen v. Thompson, 155 F. Supp. 2d 448, 454 (W.D. Pa. 2001).

Here, Plaintiff's claim giving rise to this court's original jurisdiction—that Plaintiff's First Amendment rights were violated by Defendants' alleged removal of his comment on the Borough's Facebook page—does not share a common nucleus of operative facts with the allegations in Counts Four and Five. Rather, Counts Four and Five arise from Defendants' alleged

decision not to permit Plaintiff to duplicate copyrighted material, a set of facts that cannot be said to "form part of the same case or controversy" of those in Count Three. Therefore, this Court should not extend supplemental jurisdiction to Counts Four and Five of Plaintiff's Complaint.

V.    PLAINTIFF'S CLAIM THAT DEFENDANTS' FACEBOOK POLICY VIOLATES THE FIRST AMENDMENT IS WITHOUT MERIT AND IS NOW MOOT.

The Constitution does not require the government "to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." Cornelius v. NAACP Legal Def. & Educ. Fund, 473 U.S. 788, 799-800 (1985). Instead, protected speech is determined by the forum in which the speech is taking place. In a traditional public forum, such as in parks and on streets and sidewalks, "expressive activity will rarely be incompatible with the intended use of the property. Cornelius, 473 U.S. at 817. A limited public forum, on the other hand, is "government property which the government has opened for use as a place for expressive activity for a limited amount of time, or for a limited class of speakers, or for a limited number of topics." Id. (internal citations omitted). When the government opens an instrumentality of communication "for indiscriminate use by the general public," a public forum is created. Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 47 (1983). In the context of social media, the Second Circuit has found a public forum is created when a government official "repeatedly use[s] the [social media] Account as an official vehicle for governance and ma[kes] its interactive features accessible to the public without limitation. Knight First Amendment Inst. at Columbia Univ. v. Trump, 928 F.3d 226, 237 (2d Cir. 2019) (alterations added).

However, "[p]ublic property which is not by tradition or designation a forum for public communication is governed by different standards," and the government "may reserve [such a] forum for its intended purposes, communicative or otherwise, as long as the regulation on speech

is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." Perry, 460 U.S. at 46. These nonpublic forums are government property not conducive to general expressive activity and in which the government is not required to permit such activity. Cornelius, 473 U.S. at 819. Regardless of the forum, viewpoint discrimination is prohibited and "[t]he government may not discriminate against speech based on the ideas or opinions it conveys." Iancu v. Brunetti, 139 S. Ct. 2294 (2019).

Though not a separate cause of action, Plaintiff alleges in his Complaint that the Borough's social media policy states that users who violate the policy "will be blocked and/or reported to the social media site's representative." See Amended Complaint, ¶ 45. The Complaint continues that "the Yardley Borough Social Media Policy Draft . . . does not conform with the First Amendment and that further violations of Plaintiff's Free Speech rights, to include being blocked completely from official Yardley Borough social media, would be a highly predictable consequence of the application of this policy." See Amended Complaint, ¶ 47. The Borough's Social Media Policy states that the following policy statement will be made available on social media sites and the Borough web page:

> The sole purpose of this site is to provide information concerning Yardley Borough, to its many residents, businesses, and visitors. To that end, the Borough has disabled the ability to comment to the extent permitted by a particular social media platform.

The policy continues:

> The Borough will not edit or otherwise modify any content posted by a user on any social media platform where the Borough is unable to disable the comment functioning. The only action that may be taken by the Borough is removal of content that contain the following:
>
> - Comments that do not directly relate to the information or comments posted or displayed by the Borough.
> - Vulgar or obscene language.
> - Threats of harm.

- False, misleading, or deceptive information or media.
- Any content that constitutes, promotes, fosters, or perpetuates discrimination based on race, creed, color, age, religion, gender, marital status, genetics, status with regard to public assistance, national origin, physical or intellectual disability or sexual orientation, or any other classification protected by law.
- Advertisements, promotions, and solicitations of commercial products and services.
- Personally Identifiable Information (PII) such as address, phone number, social security number, or other sensitive information.
- Information that may compromise the safety, security, or proceedings of public systems or any criminal or civil investigations or promotes illegal activity.

The Borough reserves the right to restrict or remove any content that is deemed in violation of this social media policy or any applicable law, at any time.

(Exhibit B at 1-2). The complained-of language in the draft policy regarding blocking users was ultimately not incorporated into the adopted policy, rendering moot Plaintiff's claim that it is "highly predictable" that he will be blocked from Yardley Borough social media. Further, regardless of whether Defendants' conduct on its Facebook page prior to the passage of its social media policy is deemed to have created a limited public forum, the Borough is under no obligation to maintain this limited public forum indefinitely. See, e.g. Heffron v. Int'l Soc. for Krishna Consciousness, 452 U.S. 640 (1981) (finding that the state of Minnesota created a limited public forum for the duration of a state fair). Here, after learning that their unofficial social media policy may not comport with the requirements of the First Amendment, the Borough created a social media policy that did, one in which the Borough's intent to use its social media solely to disseminate important government information is manifest. Therefore, Plaintiff's allegations that the policy violates the First Amendment are moot, without merit, and should not be countenanced by this Court.

**CONCLUSION**

For the aforementioned reasons, Defendants respectfully request that the Court dismiss Counts One and Two of Plaintiff's Complaint in their entirety, Count Three as to Defendants Johnson and Thompson in their official capacities, and Counts Four and Five in their entirety.

**MARGOLIS EDELSTEIN**

_____

Michael R. Miller, Esq.
MARGOLIS EDELSTEIN
170 Independence Square W Suite 400e
Philadelphia, PA 19106 USA
T: 215-931-5808
*Counsel for Defendants,*
*Borough of Yardley, Caroline*
*Thompson & Paula Johnson*

Date: December 6, 2022