IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EARL J. MARKEY III,<br>*Plaintiff,*<br><br>v.<br><br>CAROLINE THOMPSON, PAULA JOHNSON, BOROUGH OF YARDLEY<br>*Defendants.* | CIVIL ACTION<br>2:22-cv-04307-MAK |

**DEFENDANT'S REPLY MEMORANDUM**
**REGARDING THE ISSUE OF QUALIFIED IMMUNITY**
**IN SUPPORT OF MOTION TO DISMISS**

Pursuant to this Court's Order **(ECF No. 27)** and in response to Plaintiff's Memorandum regarding qualified immunity (**ECF No. 28)**, Defendants Caroline Thompson ("Defendant Thompson") and Paula Johnson ("Defendant Johnson") (collectively, with Borough of Yardley, "Defendant"), hereby reply as follows:

**I. Plaintiff Fails to Establish a "Clearly Established" Right or "Robust Consensus of Persuasive Cases" Existing in October 2022, and the Proposed "Wall Ornament Test" is Irrelevant to the Qualified Immunity Analysis.**

Plaintiff equates the temporary moderation of his Facebook comment with a Third Circuit case involving prison officials forcing a Muslim inmate to handle pork. *See* Williams v. Bitner, 455 F.3d 186 (3d Cir. 2006). Such a comparison is of no moment. The decision to decline qualified immunity in Bitner rested partially on the fact that the U.S. Court of Appeals from the Fifth, Seventh, and Eighth Circuits had previously held for *decades* – with a sufficient degree of particularity – that exposing Muslim inmates to pork violated First Amendment religious freedoms. *See* Kenner v. Phelps, 605 F.2d 850 (5th

1

Cir. 1979); Chapman v. Kleindienst, 507 F.2d 1246 (7th Cir. 1974); Hayes v. Long, 72 F.3d 70 (8th Cir. 1995).

Respectfully, Plaintiff's comparison of the temporary removal of his Facebook comment — which was restored within 36 hours — to the compelled handling of pork by Muslim inmates is inapposite and reflects a frivolous comparison of fundamentally different rights. The amorphousness of First Amendment rights in social media strikes soundly against a finding that a "clearly established" right or "robust consensus of case law" existed on the issue in 2022.

To that point, the purported "taping shut" of a speaker's mouth at a public square does not apply as seamlessly to social media as Plaintiff asserts. The Facebook comment in question was indeed posted on a "live-stream" of a Yardley Borough Council Meeting held on October 18, 2022.[1] Plaintiff's comment was later posted on October 26, 2022 – approximately eight days after the Meeting ended. Defendant's decision to delete and restore said comment when the public square had emptied was a discretionary moderation decision amidst unclear legal standards.

Furthermore, as Plaintiff is aware, rules of procedure and moderation apply to in-person Yardley Borough meetings. And likewise, Defendant is permitted by law to moderate the interactive functions on its Facebook page or other Internet platforms, where effective moderation is essential to maintaining order and civility. To that point, Plaintiff

---

[1] Due to the pandemic, in-person attendance at Yardley Borough meetings was limited in 2022. Defendant pursued live-streaming on Facebook to maintain public involvement at the meetings considering the pandemic and navigated the technological, logistical, and legal issues in good faith at all times. Defendant no longer uses the Facebook page to livestream meetings.

identifies a case involving a school board's policies restricting speech at in-person meetings. *See* Marshall v. Amuso, 571 F. Supp. 3d 412 (E.D. Pa. 2021), aff'd., Marshall v. Amuso, 2022 U.S. Dist. LEXIS 62498 (E.D. Pa., Apr. 4, 2022). The Amuso case involved a litany of behavior restrictive on free speech, including (a) the rejection and "termination" of public members' written comments before meetings and subsequent barring those members from speaking; (b) editing video comments made by public members; (c) interrupting comments made by public members; and (d) requiring public members to announce their names and home addresses prior to speaking at meetings. Plaintiff's focus on the policy in Amuso – a case not involving social media – and related insistence on a "wall ornament" analysis does not address the applicability of qualified immunity and whether, in October 2022, Plaintiff had a clearly established right in this case.

    Holding individual Defendants Thompson and Johnson liable under such an unsettled legal landscape would not only contradict controlling precedent on qualified immunity, but also chill the ability of public officials across Pennsylvania to carry out their duties. Accordingly, it is respectfully requested that this Court recognize Defendant's entitlement to qualified immunity.

                                                        Respectfully submitted,

                                                  **MARGOLIS EDELSTEIN**

Date: June 24, 2025

                                                  Samuel L. Romeo, Esquire
                                                  Michael R. Miller, Esquire
                                                  *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

    I, Samuel Romeo, Esquire, hereby certify that I have caused this document to be filed electronically on this day June 24, 2025. It is available for reviewing and downloading from the ECF system and will be served electronically, and via email to: earlmarkey@earlmarkey.com.

                                                  **MARGOLIS EDELSTEIN**

                                                  Samuel L. Romeo, Esquire
                                                  Michael R. Miller, Esquire

Dated: June 24, 2025