**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EARL J. MARKEY, III** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 22-4307** |
| | : | |
| **CAROLINE THOMPSON, PAULA** | : | |
| **JOHNSON, BOROUGH OF YARDLEY** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                    **June 24, 2025**

A resident undoubtedly enjoys the right to appropriately criticize his local borough government officials under the First Amendment without fear of government censure. He also may seek the borough's public records through the Pennsylvania Right to Know Law.

Many residents now communicate and learn community news through social media like Facebook. We today address whether borough officials are immune from liability for deleting a resident's critical comments from a borough's official Facebook page. The officials seek qualified immunity from the First Amendment Free Speech claim. They argue the interested resident did not have a clearly established right to criticize borough issues by commenting on the official Facebook page in October 2022. We disagree, finding a robust consensus of established law from five courts of appeals and several trial courts clearly established this right in October 2022.

We also study whether the borough may prevent the same interested resident from photographing public record architectural drawings of the Mayor's home when the architect copyrighted the drawings and the borough does not have permission to release them. We decline to exercise subject matter jurisdiction over the resident's request we rule on the validity of the borough's anticipated defense of copyright protections in a pending state administrative proceeding.

I.      **Alleged pro se facts**

Yardley Borough political party committeeman Earl J. Markey III petitioned to place a question on the November 2022 ballot seeking to reduce the number of council members on the Yardley Borough Council.[1]

*Borough officials use an official Facebook page to communicate.*

Council President Caroline Thompson posted a "brief informational piece about [her] take on the ballot referendum" on her official Facebook page on October 24, 2022.[2] Mr. Markey commented on the post and a robust debate ensued; no one removed Mr. Markey's comments.[3] Council President Thompson then posted a seemingly unrelated comment on Mr. Markey's official Facebook page and the two of them exchanged snarky remarks about pet supplies allegedly purchased with taxpayer money.[4]

Yardley Borough did not always moderate political commentary on its official Facebook page. Borough councilmembers or staff seemingly used the page to advocate for favored viewpoints.[5] For instance, Kayden's Korner—a foundation dedicated to protecting children involved in domestic custody challenges—posted a comment on the Yardley Borough Facebook page on October 16, 2022 encouraging someone named Krit Danysh-Ford to:

> get the [Pennylvania] [H]ouse [of Representatives] to pass it through committee get it to the floor for Vote then get it to our governors desk to sign. Pa would get millions to adopt the law.. Kauffman the Republican judicial committee chair is the hold up. This is common sense. Nothing more.[6]

The Borough apparently did not delete this comment although it seemingly criticized a Republican judicial committee chair.

*Local officials remove Mr. Markey's October 26, 2022 comment.*

Mr. Markey arose before dawn on October 26, 2022 to post the following comment on Yardley Borough's official Facebook page at 5:08 AM:

> Appointed Councilman Matt Curtin wants to raise your property taxes by two mills. Stop unelected, out of touch investment bankers, like Matt Curtin, from volunteering your hard-earned money for higher taxes. Vote YES on the referendum to reduce the size of Yardley Borough Council.[7]

Paula Johnson, the Borough Manager and Open Records Officer for Yardley Borough, flagged the comment as a personal attack and contacted Council President Thompson, who gave her permission to remove the comment as an administrator of the Facebook page.[8] Manager Johnson removed the comment by 3:30 PM.[9]

*The Borough allows Mr. Markey to repost his Facebook comment after he sues.*

Mr. Markey pro se sued Yardley Borough and various councilmembers the next day alleging they violated his First Amendment rights.[10] He sought an emergency temporary restraining order enjoining councilmembers from removing the disputed Facebook comment until the polls closed on November 8, 2022.[11] Judge Surrick scheduled an emergency hearing for October 31, 2022.[12]

Council President Thompson addressed the lawsuit at a November 1, 2022 Yardley Borough Council meeting. She explained the Council had allowed Mr. Markey to repost his comment so the Council would not be forced to prepare for an emergency hearing with one day's notice.[13] She announced the Council planned to implement a policy outlining appropriate social media engagement for Borough employees and officials on their personal and official social media pages.[14] The draft policy stated the Borough's "social media is for moderated online discussions only and is not a public forum[,]" the Borough may "remove comments that contain false, misleading, or deceptive information or media [or] personal attacks or threatening or harassing

activity of any kind[,]" and the Borough will delete comments violating the policy and block or report users to the social media site's representative.[15]

### *Mr. Markey seeks copyrighted architectural drawings under Pennsylvania law.*

Mr. Markey's civic engagement is not limited to political commentary on Facebook; he also frequently files requests to access Yardley Borough's public records under Pennsylvania's Right-to-Know Law.[16] He teamed up with fellow Yardley resident Dawn Perlmutter in the fall of 2022 to uncover the truth behind a local leader's illicit home improvements. Ms. Perlmutter claimed at council meetings on September 6, 2022 and September 20, 2022 that Yardley Mayor Chris Harding renovated his home without obtaining approval from the Historical Architecture Review Board or the required zoning and building permits.[17] Mayor Harding applied for a certificate of appropriateness from the Historical Architecture Review Board following Ms. Perlmutter's initial accusations, which the Board and the Yardley Borough Council approved and adopted in short order.[18] Ms. Perlmutter then submitted a Right-to-Know request to inspect the architectural files for the mayor's home.[19] The Borough responded to Ms. Perlmutter's request on October 4, 2022 explaining the Federal Copyright Act protects the engineering and architectural drawings in the file, the author of the drawings is deceased, and the Borough could not obtain permission from the current copyright holders.[20] As such, the Borough permitted Ms. Perlmutter to inspect the records but not photograph them.[21] Ms. Perlmutter appealed the Borough's decision to the Pennsylvania Office of Open Records on October 7, 2022.[22]

Mr. Markey submitted his own Right-to-Know request to inspect and photograph the copyrighted drawings through a written request to Borough Manager Johnson, who also serves as the Borough's Open Records Officer, on October 7, 2022.[23] He moved to participate in Ms.

Perlmutter's case before the Pennsylvania Office of Open Records on October 18, 2022.[24] The Office denied the motion the same day, noting Mr. Markey had an adequate remedy at law.[25]

The Office issued a final determination in Ms. Perlmutter's appeal on November 4, 2022 finding it could not order the Borough to allow Ms. Perlmutter to photograph records the Borough identified as subject to the Federal Copyright Act.[26]

Borough Manager Johnson confirmed on November 5, 2022 Mr. Markey, like Ms. Perlmutter, had permission to inspect the copyrighted records but not photograph them.[27] Mr. Markey attended the inspection appointment on November 7, 2022 and was not permitted to photograph the records.[28] Mr. Markey appealed the Borough's decision to the Office of Open Records the same day as his unsatisfactory inspection appointment.[29] He moved to stay the Office's decision on appeal pending our disposition of the federal copyright questions he expected to add to this case.[30]

Mr. Markey amended his complaint in this case on November 14, 2022 to add requests for declaratory relief involving the Federal Copyright Act.[31] The Office granted Mr. Markey's motion to stay the proceedings pending our decision.[32]

## II.    Analysis

Mr. Markey alleges First Amendment free speech violations against Borough Manager Johnson and Council President Thompson in their individual capacities, alleges First Amendment free speech municipality liability against Yardley Borough, and seeks declaratory relief the Borough would not be liable for copyright infringement under the Federal Copyright Act if it allowed Mr. Markey to photograph the public records he requested.[33]

Yardley Borough, Caroline Thompson, and Paula Johnson move to partially dismiss Mr. Markey's amended Complaint.[34] The Borough does not move to dismiss the municipal liability

claim under the First Amendment.[35] Mr. Markey opposes the Motion.[36] We allow Mr. Markey to proceed on his First Amendment claim against Council President Thompson and Borough Manager Johnson but dismiss his declaratory judgment claim for lack of subject matter jurisdiction.

### A. Council President Thompson and Borough Manager Johnson do not enjoy qualified immunity from the First Amendment claim.

Mr. Markey sues Council President Thompson and Borough Manager Johnson in their individual capacities for violating his First Amendment free speech rights. The Borough officials move to dismiss these claims on qualified immunity grounds. They argue they are entitled to qualified immunity because deleting Mr. Markey's Facebook comment in October 2022 did not violate clearly established law.[37] Mr. Markey responds in October 2022 it was clearly established "the interactive portions of official, government Facebook pages [are] protected from viewpoint discrimination."[38] We agree with Mr. Markey; qualified immunity does not apply.

"When a First Amendment free speech challenge arises from a restriction on speech on government owned or controlled property . . . the classification of the forum determines the contours of the First Amendment rights that a court recognizes when reviewing the challenged governmental action."[39] "Traditional public forums include public streets, parks, and other public areas traditionally devoted to assembly and debate."[40] A designated public forum is a space not traditionally regarded as a public forum but which the government intentionally designates as a public forum.[41] "In contrast to traditional and designated public forums, a governmental entity creates a limited public forum when it provides for 'a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects.'"[42] Content-based restrictions are permitted in a limited public forum if they are designed to confine the forum to the purposes it was

created for, but "[a] content-based restriction may not . . . restrict speech based on 'specific motivating ideology or the opinion or perspective of the speaker.'"[43]

Qualified immunity may protect state actors from liability for First Amendment violations. "'[T]he judicially created doctrine of qualified immunity' shields governmental officials from suit and from liability if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[44] The right must be "clearly established at the time of the challenged conduct."[45] The Supreme Court "has not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity."[46] But our Court of Appeals instructs clearly established rights derive not only from Supreme Court precedent but also from binding "Third Circuit precedent or from a 'robust consensus of cases of persuasive authority in the Courts of Appeals.'"[47] "We may also take into account district court cases, from within the Third Circuit or elsewhere."[48] "If there was a violation of a constitutional right and the right was clearly established, then qualified immunity does not apply."[49]

Council President Thompson and Borough Manager Johnson concede Mr. Markey states a claim for viewpoint discrimination violating the First Amendment and instead hang their hat on qualified immunity. So we turn our attention to the matter of clearly established rights. "In analyzing the 'clearly established law' prong, we proceed in two steps: we first 'define the right allegedly violated at the appropriate level of specificity' and then 'ask whether that right was "clearly established" at the time of its alleged violation.'"[50] "[T]he clearly established right must be defined with specificity[,]" and "not . . . at a high level of generality."[51]

The parties agree the constitutional right at issue is the right to comment on a government social media page.[52] They disagree on whether that right was clearly established in October 2022.

The Borough officials argue they did not violate a clearly established right because the intersection between social media and the First Amendment is a new area of law; "given the unsettled nature of the law, courts that have considered the matter have repeatedly granted qualified immunity to Defendants named in their individual capacities."[53] Mr. Markey counters "[t]he supposed novelty of social media does not redraw the contours of existing clear[ly] established law[,]" points out Facebook has been online for nearly nineteen years, and draws our attention to appellate decisions in other Circuits addressing the deletion of comments on official government social media pages.[54]

We find Mr. Markey's argument more compelling. At least five courts of appeals had addressed the issue of deleting comments and/or banning users from a government social media page as of October 2022 and held these actions violate the First Amendment. The parties have not cited, nor has our research discovered, a federal judge holding to the contrary as of October 2022. The Court of Appeals for the Second Circuit in *Knight First Amendment Institute at Columbia University v. Trump* held President Trump violated the First Amendment by using Twitter's blocking function to exclude certain individuals because of their disfavored speech.[55] The Court of Appeals for the Fourth Circuit in *Davison v. Randall* held the chair of a county board of supervisors violated the First Amendment by banning a county resident from posting on the official county Facebook page.[56] The Court of Appeals for the Fifth Circuit in *Robinson v. Hunt County* held the citizen plausibly alleged the county had an official policy of viewpoint discrimination when it posted on its official Facebook page it would remove any post with foul language, hate speech, or inappropriate content, and later removed comments by the plaintiff and banned her.[57] The Court of Appeals for the Sixth Circuit in *Lloyd v. City of Streetsboro* held the citizen plausibly alleged viewpoint discrimination against the city for deleting a "review" she left on the city's official Facebook page and banning her.[58] And the Court of Appeals for the Ninth Circuit in

*Garnier v. O'Connor-Ratcliff* held two members of a school district's board of trustees violated the First Amendment by blocking two parents from their official social media pages after the parents posted critical comments.[59] Multiple trial courts reached similar conclusions before October 2022.[60]

It is true, as the Borough officials point out, several trial judges and appellate courts who analyzed free speech rights in the social media context granted the government officials qualified immunity.[61] But these cases are distinguishable or otherwise unpersuasive. For instance, in one of the Borough's cited cases, *Kallinen v. Newman*, Judge Rosenthal found no clearly established law on whether a Facebook campaign page is a government created forum.[62] This case is inapplicable; Yardley Borough does not today seriously dispute its Facebook page presented a limited public forum in October 2022.

And we are unmoved by the Borough officials' argument they have qualified immunity simply because earlier courts looking at this issue granted qualified immunity.[63] First, those courts found no clearly established law *at the time the conduct occurred,* which, in many of the cases, was several years before the deletion of Mr. Markey's comment in October 2022.[64] Even more importantly, most of the courts which granted qualified immunity also found deleting or blocking an individual from official government social media does, in fact, violate the First Amendment.[65]

At some point, a constitutional violation must shift from being not clearly established to clearly established. If courts continually granted qualified immunity solely on the basis ***other*** courts granted qualified immunity, even though those earlier courts found the same conduct violated the Constitution, constitutional law would remain in stasis. We suspect these bedrock principles may have played a role two dozen years ago in the Supreme Court directing in *Saucier v. Katz* trial courts must determine whether a constitutional violation occurred before determining

whether the right was clearly established.[66] Although the Court overturned this requirement in *Pearson v. Callahan* finding a two-part test is not necessary in all cases, it emphasized the two-step procedure is "often beneficial" as it "promotes the development of constitutional precedent . . . ."[67]

We are unpersuaded by the Borough officials' attempt to rest on the absence of a clearly established right in their cited cases given those same opinions (and others uncited by the Borough officials) first concluded a First Amendment violation resulted from near-identical conduct. By the time the Borough officials deleted Mr. Markey's comment in October 2022, at least five courts of appeals and numerous trial courts had held deleting or blocking someone from a government social media page constitutes viewpoint discrimination. This consensus of authority is robust enough that Council President Thompson and Borough Manager Johnson should have known removing Mr. Markey's comment from Yardley's official Facebook page violated his right to free speech. The fact our Court of Appeals has not yet had the opportunity to address this issue does not impact our analysis today.[68]

We deny the Borough officials' Motion to dismiss Mr. Markey's First Amendment claims against Council President Thompson and Manager Johnson in their individual capacities.

### B.  We dismiss Mr. Markey's claim for declaratory relief.

Mr. Markey also asks us to declare the Borough would not be liable for copyright infringement under the Federal Copyright Act if it allowed him to photograph the public records he requested. The Borough moves to dismiss Mr. Markey's claim for declaratory relief arguing a federal copyright defense does not create subject matter jurisdiction.[69] Mr. Markey responds we have original jurisdiction over copyright actions and the Supreme Court's test in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing* requires us to decide his request for

declaratory relief.[70] Mr. Markey argues under *Grable* "the duplication question necessarily raises a federal Copyright issue, the issue is actually disputed, it is a substantial federal issue . . . and . . . the balance of responsibility falls to the federal courts as to the Copyright issue."[71] We agree with the Borough.

We "must look to the plaintiff's well-pleaded complaint to determine whether a case arises under federal law."[72] "A case arises under federal law for purposes of [28 U.S.C.] § 1331 or [28 U.S.C.] § 1338(a) if a right or immunity created by the Constitution or laws of the United States is an essential element of the plaintiff's cause of action."[73] This rule applies to actions seeking declaratory relief.[74] "A case does not arise under federal law simply because it is brought [under] the Declaratory Judgment Act."[75] We "lack[] jurisdiction where, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state-created action."[76]

We look to other cases involving similar facts. Our Court of Appeals's decision in *Board of Chosen Freeholders of County of Burlington v. Tombs* is instructive. Robert Tombs requested copies of certain maps at the cost of reproduction from the Burlington County Board of Chosen Freeholders under New Jersey's Open Public Records Act; the Board told Mr. Tombs it would provide him with copies according to its ordinary fee schedule.[77] Mr. Tombs threatened to seek relief in state court or from the agency responsible for deciding appeals under the Open Public Records Act.[78] The Board requested a declaratory judgment in federal court stating federal copyright law preempts Mr. Tombs' request.[79] Judge Chesler dismissed the Board's action for lack of subject matter jurisdiction.[80] Our Court of Appeals affirmed Judge Chesler's dismissal.[81] Looking to "the character of the threatened state court action[,]" the Court held "the Board cannot

invoke federal jurisdiction by asserting its federal copyright as a defense against Mr. Tombs' [Open Public Records Act] claim."[82]

Judge Baylson reached a different conclusion on federal subject matter jurisdiction in *TGaS Advisors, LLC v. Zensights*.[83] TGaS sought declaratory relief in state court seeking a judgment its development of a certain technology did not constitute copyright infringement, and Zensights— the copyright holder—removed the case.[84] Judge Baylson concluded Zensights properly removed the case to federal court.[85] He distinguished the case from *Tombs* because Mr. Tombs' "threatened action was under the state Open Records Act[;]" by contrast, "Zensights' threatened action was [one] of copyright infringement, a federal claim."[86] As such, Judge Baylson found "subject-matter jurisdiction over the entire dispute . . . ."[87]

We also look to guidance outside our Circuit. The Court of Appeals for the Eleventh Circuit in *Daker v. Chief Legal Affairs Officer* examined Waseem Daker's records request to a public university in Georgia for copies of all songs on the university's radio station song bank.[88] The university's chief legal affairs officer stated the university would not make copies of the audio files for copyright reasons.[89] Mr. Daker sought a declaration in federal court the refusal to provide copies of the audio files violated the Constitution and Georgia's Open Records Act.[90] He argued his state law claims arose under copyright law because he anticipated the university would raise a copyright defense.[91] The trial court found it lacked subject matter jurisdiction over Mr. Daker's state law claims.[92] The court of appeals affirmed the trial court's decision it lacked subject matter jurisdiction to hear the case. "A case raising a federal copyright-law 'defense does not . . . arise under' copyright law, 'even if the defense is anticipated in the plaintiff's complaint.'"[93] And Mr. Daker's "amended complaint shows that Georgia's Open Records Act, not federal copyright law, creates the cause of action for these claims."[94]

The Court of Appeals for the Seventh Circuit in *Chicago Tribune Co. v. Board of Trustees of University of Illinois* examined the Chicago Tribune's request for certain applicant materials from the University of Illinois under the Illinois Freedom of Information Act.[95] The University declined to turn over the materials under the Family Education Rights and Privacy Act of 1974, and the Tribune sought a declaratory judgment in federal court stating the University misunderstood the Act.[96] The trial court granted the Tribune's motion for summary judgment.[97] The court of appeals noted "although the University, as the natural defendant in state court, might have been able to seek a federal declaratory judgment under the mirror-image doctrine applicable to declaratory litigation, the Tribune rather than the University commenced this suit."[98] "The Tribune is the natural plaintiff and cannot use . . . the declaratory-judgment statute[] to have a federal court blot out a potential federal defense to *its own* potential state-law suit."[99]

The court of appeals in *Chicago Tribune* also examined whether the Supreme Court's holding in *Grable* impacted its analysis.[100] The Supreme Court held in *Grable* and later reiterated in *Gunn v. Minton* there is a "'small and special category' of cases" where "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."[101] The court of appeals in *Chicago Tribune* found *Grable* "does not alter the rule that a potential federal defense is not enough to create federal jurisdiction under [section] 1331."[102] The Court's analysis in *Grable* differed from the dispute in *Chicago Tribune* because in *Grable* the federal issue formed part of the plaintiff's own claim.[103] As such, "[t]he Supreme Court had to decide whether a claim 'arises under' federal law . . . when one element of a claim depends on state law and another on federal law."[104] By contrast, the Chicago Tribune's "claim for documents [arose] under state law, and *only* state law; the Tribune's request for the

information [did] not depend on even a smidgeon of federal law."[105] The court of appeals vacated the trial court's judgment and remanded the case with instructions to dismiss for lack of subject matter jurisdiction.[106]

We are persuaded by the reasoning in *Tombs*, *Daker*, and *Chicago Tribune*; Judge Baylson's decision in *TGaS* is plainly distinguishable from the case before us. The decisions by our Court of Appeals in *Tombs* and the Courts of Appeals for the Eleventh and Seventh Circuits in *Daker* and *Chicago Tribune* confirm a federal defense cannot create federal jurisdiction. We start with our Court of Appeal's decision in *Tombs* instructing us to look to "the threatened state court action" to determine whether we have jurisdiction over a declaratory action.[107] This doctrine, known as the "coercive action doctrine," exists because oftentimes "[a] declaratory judgment action has the practical effect of reversing the alignment of a plaintiff and defendant in a suit."[108] "[A] federal court will not 'seize' litigation from state court merely because one, normally a defendant, goes to federal court to begin his federal law defense before litigation begins in state court under state law."[109]

We look to the nature of the threatened state court action, *i.e.*, the appeal Mr. Markey commenced before the Office of Open Records, whose final decision can be appealed to the Commonwealth Court. Mr. Markey stands in the same position there as he does in federal court. In both actions, he needs a factfinder to decide the Borough would not violate copyright law by permitting him to duplicate the records. The court of appeals's analysis in *Chicago Tribune* illustrates why Mr. Markey's use of the Declaratory Judgment Act is improper. In *Chicago Tribune*, as here, the party seeking declaratory relief in federal court was the same party threatening state court action over a records request. The court of appeals explained while the party who ***declines*** a records request might be able to seek a federal declaratory judgment provided the threatened state

court action against it would arise under federal law, the party who **requested** the records cannot seek a declaratory judgment to "blot out a potential federal defense to its own potential state-law suit."[110]

Yet we note we would not have jurisdiction even if the Borough, and not Mr. Markey, sought declaratory relief. Either way, Mr. Markey's threatened state court action arises under state law. Mr. Markey argues "there is no state law issue at dispute here as [he] was granted access to the record."[111] But this is plainly incorrect. His appeal before the Office of Open Records arises solely under Pennsylvania's Right-to-Know Law; he is not seeking to duplicate records under federal law. The fact the Borough relied on federal copyright law when it denied Mr. Markey's duplication request and may use this defense on appeal is immaterial; "it is blackletter law that a federal defense differs from a claim arising under federal law."[112]

We acknowledge the Pennsylvania Commonwealth Court's analysis in *Ali v. Philadelphia City Planning Commission* found the duplication of copyrighted materials under the Right-to-Know Law "implicates rights and potential liabilities arising under the Copyright Act that can only be resolved by the federal courts."[113] But the mere fact Pennsylvania courts lack jurisdiction over federal copyright questions does not confer jurisdiction upon us; we can only decide federal issues if they are properly before us. And the only way we have jurisdiction over a declaratory action is when the threatened state court action arises under federal law. For instance, we could properly exercise our jurisdiction to decide the tension between the Right-to-Know Law and federal copyright law if the copyright holder of the architectural drawings threatened to sue Mr. Markey for copyright infringement and Mr. Markey sought a declaration his duplication of the drawings did not infringe upon the holder's rights. This is precisely why Judge Baylson enjoyed subject matter jurisdiction over the declaratory action in *TGaS* but we do not. In *TGaS*, "Plaintiff sought

a declaratory judgment in anticipation of a threatened claim of copyright infringement[.]"[114] Not so here. We cannot exercise federal question jurisdiction for the sole purpose of ruling out Yardley Borough's potential copyright infringement defense to Mr. Markey's state law action.[115]

## III.    Conclusion

We grant in part and deny in part the Borough's and its officials' partial Motion to dismiss. Mr. Markey may proceed into discovery on his First Amendment claims against Council President Thompson and Borough Manager Johnson. We dismiss without prejudice Mr. Markey's claim for declaratory relief finding we lack subject matter jurisdiction to decide it.

---

[1] ECF 9 at 2.

[2] *Id.* ¶ 21.

[3] *Id.* ¶ 22.

[4] *Id.* ¶ 23.

[5] *Id.* ¶¶ 13–15.

[6] *Id.* ¶ 15.

[7] *Id.* ¶ 24.

[8] *Id.* ¶¶ 26–29.

[9] *Id.* ¶ 25.

[10] ECF 1.

[11] ECF 2.

[12] ECF 4. Judge Surrick dismissed Mr. Markey's Motion for a temporary restraining order on November 9, 2022 because Mr. Markey did not seek relief beyond Election Day on November 8, 2022. ECF 8. Chief Judge Goldberg reassigned this case to our docket last month. ECF 21.

[13] ECF 9 ¶ 32.

[14] *Id.*

[15] *Id.* ¶¶ 33–35 (cleaned up).

[16] *Id.* ¶ 49.

[17] *Id.* ¶ 51. The Pennsylvania Office of Open Records refers to Dawn Perlmutter as Dr. Perlmutter in its final determination, *see infra* note 22, but we are bound by Mr. Markey's allegations at this stage, and he does not refer to Ms. Perlmutter by her honorific.

[18] *Id.* ¶ 51 n.7.

[19] *Id.* ¶ 52.

[20] *Id.* ¶ 53.

[21] *Id.*

[22] *Id.* ¶ 55 n.8. We take judicial notice of the Office's denial of Ms. Perlmutter's appeal. *See* Dawn Perlmutter, No. AP 2022-2347 (Pa. Off. of Open Records 2022), https://www.openrecords.pa.gov/Appeals/DocketGetFile.cfm?id=106869.

[23] *Id.* ¶ 54.

[24] *Id.* ¶ 55.

[25] *Id.*

[26] *Id.* ¶ 57; *see also* Dawn Perlmutter, No. AP 2022-2347, at 8 (Pa. Off. of Open Records 2022), https://www.openrecords.pa.gov/Appeals/DocketGetFile.cfm?id=106869.

[27] *Id.* ¶ 58.

[28] *Id.* ¶ 59. Mr. Markey alleges he requested electronic copies of the application Mayor Harding had submitted to the Historical Architecture Review Board in 2004, which includes three copyrighted drawings labeled "Building Information." *Id.* ¶¶ 59–60. It is unclear whether Mr. Markey means he requested *additional* materials during the inspection meeting or whether the "2004 Application" simply refers to the record that Mr. Markey was there to inspect. It does not matter for the purposes of our decision.

[29] *Id.* ¶ 62.

[30] *Id.* We note a docket search on the Office's website of the case name and docket number Mr. Markey pleads ("*Markey v. Yardley Borough*, OOR Dkt. AP 2022-2548") does not yield results.

[31] *Id.* ¶¶ 88–95.

[32] *Id.* ¶ 64.

[33] *Id.* ¶¶ 69–95.

[34] ECF 15. Council President Thompson and Borough Manager Johnson move to dismiss the First Amendment claims against them in their individual capacity for failure to state a claim under Rule 12(b)(6). The Borough moves to dismiss the claim for declaratory relief for lack of subject matter jurisdiction under Rule 12(b)(1).

There are two types of challenges under Rule 12(b)(1): facial challenges and factual challenges. "A facial attack contests the sufficiency of the pleadings, whereas a factual attack contests the sufficiency of jurisdictional facts." *D'Andrea v. U.S. Army Corps of Eng'rs*, No. 21-9569, 2023 WL 4103929, at *4 (D.N.J. June 20, 2023) (citing *Lincoln Ben. Life Co. v. AEI Life, L.L.C.*, 800 F.3d 99, 105 (3d Cir. 2015)). The Borough's challenge is a facial attack because it relies on the pleadings. The standard applied to a facial attack on our subject matter jurisdiction is the same as the standard applied to a motion to dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6). *Petruska v. Gannon Univ.*, 462 F.3d 294, 299 (3d Cir. 2006) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting A*shcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility that a defendant has acted unlawfully." *Riboldi v. Warren Cnty., Dep't of Hum. Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (alteration in original) (quoting *Iqbal*, 556 U.S. at

678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). "[B]ecause [Mr. Markey] has filed his complaint pro se, we must liberally construe his pleadings, and we will apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)).

Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) "we 'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) "we 'identify allegations that . . . "are not entitled to the assumption of truth"' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations, and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff,]' we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (alterations in original) (citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[35] The parties spend time and ink addressing a claim not plead by Mr. Markey. Yardley Borough argues to the extent Mr. Markey alleges the Borough's proposed social media policy violates the First Amendment we must dismiss that claim as moot because "[t]he complained-of language in the draft policy regarding blocking users was ultimately not incorporated into the adopted policy . . . ." ECF 15-1 at 20. The policy the Borough actually adopted comports with the First Amendment because it clearly states the sole purpose of its social media is to "disseminate important government information[.]" *Id.* at 20. Mr. Markey responds the Borough's later adoption of a social media policy constitutes "voluntary cessation," which does not moot Mr. Markey's case unless "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." ECF 16 at 10 (quoting *Fields v. Speaker of the Pa. House of Representatives*, 936 F.3d 142, 161 (3d Cir. 2019)). The Borough clarifies it is not arguing its social media policy moots all of Mr. Markey's claims; it is only arguing the social media policy it actually adopted moots Mr. Markey's claim about its *proposed* social media policy because the two policies are different. ECF 17 at 2.

The parties' briefing on this point is largely irrelevant because Mr. Markey does not plead a cause of action concerning the Borough's proposed or current policy. Mr. Markey mentioned at oral argument he is possibly requesting injunctive relief with respect to the current social media policy but his amended Complaint as pleaded requests no such relief. And he has no present injury. Mr. Markey's claim against the Borough for municipal liability is about the Borough's unwritten policy resulting in the deletion of his comment or, alternatively, the Borough's failure to adopt a social media policy resulting in the deletion of his comment. ECF 9 ¶¶ 83–87. The claim is **_not_** about the draft social media policy or the policy the Borough actually adopted following Mr. Markey's federal lawsuit. The Borough does not seek to dismiss the municipal liability claim concerning its

unwritten policy or lack of policy on October 26, 2022. We need not decide this issue because there is no cause of action requiring us to decide it.

[36] ECF 16. Mr. Markey previously withdrew his free speech claim against Council President Thompson and Borough Manager Johnson in their official capacities as well as his claim for declaratory relief concerning the fair use of copyrighted materials. *See* ECFs 16, 22.

[37] ECF 15-1 at 8–11.

[38] ECF 16 at 6–7.

[39] *Galena v. Leone*, 638 F.3d 186, 197 (3d Cir. 2011) (first citing *United States v. Marcavage*, 609 F.3d 264, 274 (3d Cir. 2010); then citing *Kreimer v. Bureau of Police of Morristown*, 958 F.2d 1242, 1255 (3d Cir. 1992)).

[40] *Id.* at 198 (citing *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998)).

[41] *See id.* (citing *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 679 n.11 (2010)).

[42] *Id.* (first quoting *Pleasant Grove City v. Summum*, 555 U.S. 460, 470 (2009); then citing *Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 225 (3d Cir. 2003)).

[43] *Miller v. Goggin*, 672 F. Supp. 3d 14, 36 (E.D. Pa. 2023) (quoting *Galena*, 638 F.3d at 199).

[44] *Mack v. Yost*, 63 F.4th 211, 221 (3d Cir. 2023) (alteration in original) (quoting *Peroza-Benitez v. Smith*, 994 F.3d 157, 164–65 (3d Cir. 2021)).

[45] *Hicks v. City of Phila.*, No. 22-977, 2023 WL 5278713, at *8 (E.D. Pa. Aug. 16, 2023) (quoting *George v. Rehiel*, 738 F.3d 562, 579 (3d Cir. 2013)).

[46] *District of Columbia v. Wesby*, 583 U.S. 48, 66 n.8 (2018) (citing *Reichle v. Howards*, 566 U.S. 658, 665–66 (2012)).

[47] *James v. N.J. State Police*, 957 F.3d 165, 170 (3d Cir. 2020) (first quoting *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018); then citing *Wesby*, 583 U.S. at 63).

[48] *Peroza-Benitez*, 994 F.3d at 165–66 (citing *Fields v. City of Phila.*, 862 F.3d 353, 361 (3d Cir. 2017)).

[49] *Sarrano v. City of Scranton*, No. 17-2398, 2019 WL 450573, at *7 (M.D. Pa. Feb. 5, 2019).

[50] *Mack*, 63 F.4th at 228 (quoting *Jefferson v. Lias*, 21 F.4th 74, 81 (3d Cir. 2021)).

[51] *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)).

[52] ECF 15-1 at 11 (discussing the "contours of [the] right" to "post[] a comment on a borough's official Facebook page"); ECF 16 at 6–7 (arguing it is "clearly established that the interactive portions of official, government Facebook pages [are] protected from viewpoint discrimination"). Council President Thompson and Borough Manager Johnson argue paragraph 36 of Mr. Markey's amended Complaint "defin[es] the right at . . . a high level of generality[,]" ECF 15-1 at 11, but we don't interpret paragraph 36 as setting forth Mr. Markey's proposed definition.

[53] ECF 15-1 at 10–11.

[54] ECF 16 at 4–7.

[55] 928 F.3d 226, 237–39 (2d Cir. 2019*), judgment vacated as moot sub nom. Biden v. Knight First Amend. Inst. at Columbia Univ.*, 141 S. Ct. 1220 (2021), *abrogated on other grounds by Lindke v. Freed*, 601 U.S. 187 (2024). The Supreme Court held in *Lindke v. Freed* a public official who deletes social media comments only engages in state action if the official possessed actual authority to speak on the state's behalf and purported to exercise that authority when speaking on social media. 601 U.S. at 198–04. *Lindke* does not impact our decision today because the parties do not dispute Council President Thompson and Borough Manager Johnson possessed authority to speak on Yardley Borough's behalf and purported to exercise that authority when they deleted Mr. Markey's comment.

[56] 912 F.3d 666, 682–88 (4th Cir. 2019), *as amended* (Jan. 9, 2019).

[57] 921 F.3d 440, 445–50 (5th Cir. 2019).

[58] No. 18-3485, 2018 WL 11298664, at *3–*4 (6th Cir. Dec. 20, 2018).

[59] 41 F.4th 1158, 1163–66, 1179–83 (9th Cir. 2022), *vacated and remanded on other grounds*, 601 U.S. 205 (2024), *abrogated on other grounds by Lindke v. Freed*, 601 U.S. 187 (2024).

[60] *See, e.g.*, *Blackwell v. City of Inkster*, 596 F. Supp. 3d 906, 921–23 (E.D. Mich. 2022) (plaintiff sufficiently alleged viewpoint discrimination when city officials deleted plaintiff's comments on Facebook pages of police department and mayor criticizing government's lack of transparency surrounding an embezzlement investigation); *Anderson v. Hansen*, 519 F. Supp. 3d 457, 468 (E.D. Wis. 2021) (plaintiff sufficiently alleged viewpoint discrimination when school district removed plaintiff's comments criticizing school's response to the COVID-19 pandemic on school's Facebook page; the page constituted a designated public forum "because the District allowed members of the public to write their own comments underneath the post and to carry on discussions with one another"); *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 576–80 (W.D. Va. 2021) (plaintiff sufficiently alleged viewpoint discrimination when school officials blocked her from official Twitter page and deleted her comments criticizing school's COVID-19 protocols and facemask policy on official Facebook page); *Windom v. Harshbarger*, 396 F. Supp. 3d 675, 683–85 (N.D.W. Va. 2019) (plaintiff sufficiently alleged viewpoint discrimination when member of state house of delegates deleted plaintiff's comments on official Facebook page opposing co-tenancy bill supported by delegate and blocked plaintiff from page).

[61] *See, e.g.*, *Garnier*, 41 F.4th at 1183–84; *Kallinen v. Newman*, 616 F. Supp. 3d 645, 655–57 (S.D. Tex. 2022), *aff'd*, No. 22-20383, 2023 WL 2645555 (5th Cir. Mar. 27, 2023); *Blackwell*, 596 F. Supp. 3d at 924–25. We note additional opinions granting qualified immunity which the Borough does not cite. *See, e.g.*, *Wagschal v. Skoufis*, 442 F. Supp. 3d 612, 624–27 (S.D.N.Y. 2020), *aff'd*, 857 F. App'x 18 (2d Cir. 2021).

[62] 616 F. Supp. 3d at 655–57.

[63] ECF 15-1 at 10–11.

[64] The Borough officials cite the analysis derived from *Kallinen*, *Blackwell*, and *Garnier* as examples. *Kallinen* is distinguishable as noted above. The disputed conduct in *Blackwell* took place in March 2021. 596 F. Supp. 3d at 911. The conduct in *Garnier* took place in October 2017. 41 F.4th at 1166. The conduct in the other cases we gathered likewise took place well before the Borough officials deleted Mr. Markey's comment. *See Knight First Amendment Institute*, 928 F.3d at 232 (blocking occurred in May and June of 2017); *Davison*, 912 F.3d at 675 (deletion of post and banning occurred in February 2016); *Robinson*, 921 F.3d at 445 (deletion of comment and banning occurred in January 2017); *Lloyd*, 2018 WL 11298664 (deletion of review and blocking occurred sometime before plaintiff sued in January 2018 as reflected by docket); *Anderson*, 519 F. Supp. 3d at 459 (deletion of comments occurred after August 2020 meeting); *Scarborough*, 517 F. Supp. 3d at 575–76 (deletion of comments and blocking occurred in fall 2020); *Windom*, 396 F. Supp. 3d at 679 (blocking occurred during 2018 legislative session); *Wagschal*, 4422 F. Supp. 3d at 616 (blocking occurred in August 2018).

[65] *See supra* notes 55–60 and accompanying text.

[66] 533 U.S. 194, 201 (2001).

[67] 555 U.S. 223, 236 (2009).

[68] *El v. City of Pittsburgh*, 975 F.3d 327 (3d Cir. 2020) ("[C]ases from our sister Circuits establish a 'consensus . . . of persuasive authority[.]'" (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011))). The Borough officials argue in their supplemental brief it would be inappropriate to import the approach taken by courts in the Fifth Circuit because the Borough officials should be able to rely on the settled law of their own jurisdiction when it comes to qualified immunity. ECF 29 at 6 (citing *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). We do not agree. For one thing, the Fifth Circuit is not the only circuit where deleting a Facebook comment constitutes viewpoint discrimination; the Courts of Appeals for the Second, Fourth, Sixth, and Ninth Circuits take a similar position. And in *Wilson*, only two unpublished district court decisions dealt with the specific constitutional right at hand plus one decision by the Sixth Circuit Court of Appeals dealing with a right "[a]t a slightly higher level of generality." 526 U.S. at 616 –17. As such, the Supreme Court found there was no "consensus of cases of persuasive authority . . . ." *Id.* at 617. Not so here.

[69] *Id.* at 14–17. The Borough also argues we lack supplemental jurisdiction over the claim for declaratory relief because it does not form part of the same case or controversy as Mr. Markey's First Amendment claims. *Id.* at 17–18.

[70] 545 U.S. 308 (2005).  Mr. Markey actually cites the Supreme Court's holding in *Gunn v. Minton*, 568 U.S. 251 (2013), *see* ECF 16 at 9, but we refer to the *Grable* test because that is where the test first arose.

[71] ECF 16 at 9.

[72] *Bd. of Chosen Freeholders of Burlington v. Tombs*, 215 F. App'x 80, 81 (3d Cir. 2006) (quoting *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002)).

[73] *Id.* (first citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988); then citing *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 10–11 (1983)).

[74] *Id.* (citing *Franchise Tax Bd.*, 463 U.S. at 15–16).

[75] *Id.*

[76] *Id.* (citing *Franchise Tax Bd.*, 463 U.S. at 16).

[77] *Id.* at 81.

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Id.* at 81, 82 (first citing *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 248 (1952); then citing *Thiokol Chem. Corp. v. Burlington Indus., Inc.*, 448 F.2d 1328, 1330 (3d Cir. 1971)).

[83] No. 16-1870, 2016 WL 2594643 (E.D. Pa. May 5, 2016).

[84] *Id.* at *1.

[85] *Id.* at *2.

[86] *Id.* at *4 ("Unlike the defendant in *Tombs*, Zensights was actually threatening to bring a claim under federal law.").

[87] *Id.* at *5.

[88] No. 21-14102, 2023 WL 2317908, at *2 (11th Cir. Mar. 2, 2023).

[89] *Id.*

[90] *Id.* at *3.

[91] *Id.* at *6.

[92] *Id.*

[93] *Id.* at *5 (quoting *Christianson*, 486 U.S. at 809).

[94] *Id.* at *6 (citing GA. CODE ANN. § 50-18-73 (2012)).

[95] 680 F.3d 1001, 1002 (7th Cir. 2012).

[96] *Id.* at 1002–03.

[97] *Id.* at 1003.

[98] *Id.* (citing *NewPage Wis. Sys. Inc. v. United Steel Workers*, 651 F.3d 775 (7th Cir. 2011)).

[99] *Id.* (emphasis added) (first citing *Franchise Tax Bd.*, 463 U.S. at 16; then citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950)).

[100] *Id.* at 1003–04.

[101] 568 U.S. at 258; *see also Grable*, 545 U.S. at 314.

[102] *Chicago Tribune*, 680 F.3d at 1003.

[103] *Id.*

[104] *Id.* at 1004.

[105] *Id.*

[106] *Id.* at 1006.

[107] *Tombs*, 215 F. App'x at 82.

[108] *Zohar CDO 2003-1, Ltd. v. Croscill Home LLC*, No. 17-1797, 2018 WL 881758, at *8 (D. Del. Feb. 14, 2018) (citing *Wycoff*, 344 U.S. at 248).

[109] *Id.* (citing *Wycoff*, 344 U.S. at 248).

[110] *Chicago Tribune*, 680 F.3d at 1003. In stating the University may have been able to seek a federal declaratory judgment, the court of appeals in *Chicago Tribune* cited its decision in *NewPage*, where it held a federal court only has jurisdiction in a declaratory action where the "natural" plaintiff's action arises under federal law and the "natural" defendant seeks a declaratory judgment in state court. 651 F.3d at 777–78 (first citing *Wycoff*, 344 U.S. at 248; then citing *DeBartolo v. Healthsouth Corp.*, 569 F.3d 736 (7th Cir. 2009); and then citing *Wisconsin v. Ho–Chunk Nation*, 512 F.3d 921 (7th Cir. 2008)). Presumably, then, even if the University had been the party seeking declaratory relief the court would not have had federal jurisdiction, since the Tribune's threatened state court action arose only under state law.

[111] ECF 16 at 7–8.

[112] *Chicago Tribune*, 680 F.3d at 1003.

[113] 125 A.3d 92, 105 (Pa. Commw. Ct. 2015).

[114] *TGaS Advisors*, 2016 WL 2594643, at *2.

[115] We need not address the issue of supplemental jurisdiction because Mr. Markey is not seeking to have his Right-to-Know Law claim vindicated in federal court.